**STATE of Utah, Plaintiff and Appellee,**

v.

**Montano Vincent RUGEBREGT, Defendant and Appellant.**

**No. 971214–CA.**

Court of Appeals of Utah.

July 30, 1998.

Paul Gotay, Salt Lake City, for Defendant and Appellant.

Jan Graham, Atty. Gen., and Thomas B. Brunker, Asst. Atty. Gen., Salt Lake City, for Plaintiff and Appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

ORME, Judge:

Montano Vincent Rugebregt appeals his conviction for two counts of rape, a first degree felony, in violation of Utah Code Ann. § 76-5-402 (1995), and one count of forcible sodomy, a first degree felony, in violation of

Utah Code Ann. § 76-5-403(2) (1995). We affirm.

## FACTS

"On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown*, 948 P.2d 337, 339 (Utah 1997). In the early morning of May 5, 1996, and then again that evening, Rugebregt entered the bedroom of the victim, the seventeen-year-old sister of his fiancée, and raped and orally sodomized her. On May 7, 1996, the victim reported Rugebregt's actions to the police and went to the hospital for an examination. The examination was performed by Susan Bryner–Brown, a registered nurse. During the examination, Bryner–Brown noted bruises on the victim's arm and back, and redness, swelling, and abrasions on the victim's vaginal area.

The State charged Rugebregt with two counts each of rape and forcible sodomy. Rugebregt admitted having sexual relations with the victim, but claimed their encounters were consensual. Before trial, Rugebregt filed numerous motions in limine, including one to exclude "profile" evidence.

Rugebregt's Motion In Limine to Exclude Profile Evidence sought the exclusion of testimony from medical personnel who had examined the victim as to whether her "anger, hate, tearfulness, or any other emotional display were consistent with other sexually abused children" they had examined. Rugebregt argued this testimony would violate psychological profile testimony restrictions established in *State v. Rimmasch*, 775 P.2d 388 (Utah 1989). Rather than directly ruling on Rugebregt's motion, the trial court decided to review the precise holding in *Rimmasch* and consider its application to Bryner–Brown's testimony during trial. Neither side objected to this deferral of the issue.

During the pretrial argument on Rugebregt's motions in limine, the prosecutor represented that Bryner–Brown would not testify that the victim was raped. The prosecutor also proffered that Bryner–Brown might testify that the victim's injuries resulted from "forceful" intercourse, but that Bryner–Brown would acknowledge that "sometimes consensual intercourse is forceful." The trial court instructed the prosecutor to admonish Bryner–Brown not to testify that "a rape occurred."

Also before trial, Rugebregt filed a motion to compel the deposition of certain witnesses, including Bryner–Brown. The trial court denied this motion, but ordered the prosecutor to provide written testimony summaries for Bryner–Brown and other witnesses who did not testify at Rugebregt's preliminary hearing but who would be called at trial. Although the court ordered it to provide these summaries by October 7, 1996, the prosecution did not provide them until around October 17, five days before trial. However, Rugebregt did not request a continuance to compensate for the prosecutor's delay. The prosecutor's summary of Bryner–Brown's testimony stated that Bryner–Brown would testify that the victim's account of her injuries was consistent with Bryner–Brown's physical findings during the examination. The summary also indicated that Bryner–Brown would comment on the actual or possible significance of these physical findings.

At trial, Bryner–Brown described the physical characteristics of the victim's vaginal injuries. In response to the prosecutor's question about the significance of these traits, Bryner–Brown began to answer that "the abrasions and that type of trauma has been shown in the research...." At this point, Rugebregt's counsel objected, without stating a basis, and the trial court sustained the objection. The prosecutor then attempted to establish a foundation for the "research" to which Bryner–Brown had referred. However, when Bryner–Brown tried to discuss the significance of the research, Rugebregt's counsel again objected.

In response to this objection, the trial court excused the jury and ordered the prosecutor to provide an oral proffer of Bryner–Brown's testimony. The prosecutor asserted that Bryner–Brown would testify that her training and research indicated the victim's injuries were caused by vaginal penetration, but that the injuries could occur from consensual intercourse. The trial court accepted this proffer, overruled the objection, and en-

couraged Rugebregt's counsel to object to any testimony that varied from the prosecutor's proffer.

The jury then returned and the prosecutor resumed questioning Bryner–Brown as follows:

Q: The question before you is a request that you inform the court as to what literature you are aware of that discusses the significance of abrasions on the posterior fo[ ]rchette in this type of an examination?

A: There are quite a few studies. Well, four or five studies that have been done about micro trauma post sexual assault that has shown that this pattern of injury occurs in approximately in about 85 to 87 percent.

[Defense counsel]: Objection, Your Honor. That is not the proffer made by [the prosecutor].

THE COURT: The objection is sustained.

Q: [By the prosecutor] So there is some significance to this type of injury?

A: Yes, there is in the medical literature.

Q: Are you able to come to a conclusion based upon your reading of the literature and your own experience about what causes this kind of injury?

A: Usually forcible penetration.

[Defense counsel]: Objection, Your Honor.

THE COURT: Overruled. That answer will stand.

Q: [By the prosecutor] Okay, this forcible penetration, is that possible to happen when there is consensual sex?

A: According to the research and according to what is known about anatomic changes that occur with arousal and consenting intercourse because anatomical changes occur in the vagina—

[Defense counsel]: Your Honor, I object.

THE COURT: Excuse me. The objection is sustained and the jury is admonished to disregard the last statement. Restate the question again.

. . . .

Q: [By the prosecutor] I believe that my question requires only a yes or no. That is, is it possible that something like what you saw on [the victim] on that day could have happened with consensual intercourse, just yes or no?

A: No.

[Defense counsel]: Objection, Your Honor. That is not the proffer made by [the prosecutor].

THE COURT: Excuse me. The objection is sustained. The jury is admonished to disregard the last statement and the last statement is stricken.

Rugebregt's counsel did not request a continuance to deal with Bryner–Brown's unexpected testimony, which varied from the prosecutor's proffer. Instead, he resumed the same line of questioning on cross-examination, asking Bryner–Brown again if vaginal trauma can occur from consensual intercourse. As she had done on direct-examination, Bryner–Brown responded in the negative.

At the trial's conclusion, the jury convicted Rugebregt of one count of forcible sodomy and two counts of rape. Rugebregt subsequently filed a Motion for New Trial, arguing that Bryner–Brown's testimony violated his Due Process rights as well as numerous evidentiary rules. The trial court denied this motion, and Rugebregt appeals.

## ISSUES AND STANDARD OF REVIEW

Rugebregt raises essentially three issues on appeal, all of which concern the propriety of Bryner–Brown's testimony. First, we must decide whether the prosecutor's conduct surrounding Bryner–Brown's testimony violated Rugebregt's Due Process rights and Rule 16 of the Utah Rules of Criminal Procedure to an extent requiring reversal. Second, we must determine whether Bryner–Brown's testimony violated the limits on expert testimony outlined by the Utah Supreme Court in *State v. Rimmasch*, 775 P.2d 388 (Utah 1989). Finally, we must decide whether the prejudicial effect of Bryner–Brown's testimony outweighed its probative value, violating Rule 403 of the Utah Rules of Evidence.

Absent a demonstrated Due Process violation, we review each of these issues under an abuse of discretion standard. *See State v. Knight,* 734 P.2d 913, 918 (Utah 1987) (criminal discovery violations); *State v. Brown,* 948 P.2d 337, 340 (Utah 1997) (admissibility of expert testimony under *Rimmasch* ); *State v. Hamilton,* 827 P.2d 232, 239 (Utah 1992) (admissibility of evidence under Rule 403).

## DISCOVERY DUTY VIOLATIONS

■ Rugebregt contends the prosecutor misled him regarding Bryner–Brown's testimony, violating his Due Process rights and Rule 16 of the Utah Rules of Criminal Procedure. In criminal prosecutions,

the State has two independent obligations to provide evidence to the defense. First, the State has a duty under the Due Process Clause of the United States Constitution to provide, without request by the defendant, all exculpatory evidence. Second, when required by court order, the State must disclose evidence pursuant to Rule 16 of the Utah Rules of Criminal Procedure.

*State v. Kallin,* 877 P.2d 138, 143 (Utah 1994) (citations omitted). The evidence in question—Bryner-Brown's testimony that the victim's injuries were of the type usually caused by forcible, nonconsensual penetration—was inculpatory rather than exculpatory. Consequently, the prosecutor's discovery duty was limited to disclosures under Rule 16. *See State v. Mickelson,* 848 P.2d 677, 689 n. 16 (Utah Ct.App.1992) (noting prosecution's constitutional disclosure duty "is not of use when a defendant seeks access to nonexculpatory information").

Regarding discovery under Rule 16, "[t]he practice in this state, at least in some districts, is for the prosecutors to make all inculpatory evidence available to the defense on request." *Kallin,* 877 P.2d at 143. However, "[w]hether prosecutors produce inculpatory evidence under court order or on request, they have a duty to comply fully and forthrightly." *Id.*

In response to Rugebregt's requests and the trial court's orders, the prosecutor proffered that Bryner–Brown would testify that, although the victim's injuries could result from forceful intercourse, such intercourse could nonetheless be consensual. The prosecutor further proffered that Bryner–Brown would not testify that Rugebregt raped the victim. The trial court admonished the prosecutor to limit Bryner–Brown's testimony accordingly. However, at trial Bryner–Brown testified that the victim's injuries could not have resulted from consensual intercourse and that they were the kind usually associated with "forcible," rather than the proffered "forceful," penetration. Hence, whether or not it intended to do so,[1] the prosecution elicited testimony that failed to fully and forthrightly comply with its Rule 16 obligation.

■ Rule 16 provides:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Utah R.Crim. P. 16(g). Rule 16(g) thus provides several remedies to mitigate prejudice caused by unanticipated testimony, including a continuance. When the prosecution introduces unexpected testimony, a defendant "essentially waive[s] his right to later claim error" if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g). *State v. Larson,* 775 P.2d 415, 418 (Utah 1989). *See also State v. Griffiths,* 752 P.2d 879, 883 (Utah 1988) (holding that, by failing to move for continuance, "defendant waived relief under rule 16(g) ... by not making timely efforts to mitigate or eliminate the prejudice caused by the prosecutor's conduct"); *State v. Christofferson,* 793 P.2d 944, 948 (Utah Ct.App.1990) (holding dismissal inappropriate because defendant failed to exhaust Rule 16(g) remedies, such as requesting continuance).

---

1. From all that appears, the prosecutor was as surprised as the next person by the turn Bryner– Brown's testimony took at trial.

Rugebregt claims that, had the prosecutor accurately represented the nature of Bryner–Brown's testimony, Rugebregt's counsel could have called rebuttal witnesses. However, Rugebregt never requested a continuance to locate such witnesses, or to devise *any* means of dealing with Bryner–Brown's unexpected testimony. A continuance could have mitigated or eliminated the ensuing prejudice. Consequently, by failing to make a timely request for a continuance, Rugebregt waived his Rule 16 challenge to Bryner–Brown's testimony.

## *RIMMASCH* EVIDENTIARY CLAIMS

Rugebregt claims Bryner–Brown's testimony exceeded the limits on expert testimony outlined by the Utah Supreme Court in *State v. Rimmasch,* 775 P.2d 388 (Utah 1989). Specifically, Rugebregt takes issue with Bryner–Brown's testimony that the victim's physical injuries: (1) were of the type usually caused by forcible penetration, (2) were consistent with those described in research concerning sexual assault victims, and (3) could not have been caused by consensual intercourse. As is hereafter explained, we believe Bryner–Brown's testimony is distinguishable from the type of expert testimony treated in *Rimmasch.*

■ The *Rimmasch* court held that trial courts must conduct a three-step analysis to determine the admissibility of certain scientific evidence.[2] *See* 775 P.2d at 398–403 & nn. 7–8. Specifically, *Rimmasch* dictates that experts may not testify as to a witness's veracity on a particular occasion, and that conclusions based even in part on psychological profiles must conform to the three-part test.[3] *See id.* at 392–93, 403.

Rugebregt claims Bryner–Brown's testimony exceeded the limits of *Rimmasch* and that the trial court violated *Rimmasch* in its treatment of this testimony. However, the *Rimmasch* Court carefully distinguished testimony based on " 'a brief set of narrow, specific, and predominantly physical symptoms,' " which has sufficient threshold reliability, from testimony based on "a long list of vague and sometimes conflicting psychological characteristics," which is subject to all three levels of *Rimmasch* scrutiny. *Id.* at 400–01 (quoting Note, *The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims,* 74 Geo. L.J. 429, 448 (1985)).

Our Supreme Court confirmed this distinction in *State v. Kallin,* 877 P.2d 138 (Utah 1994). In *Kallin,* the Court upheld the admissibility of an examining pediatrician's testimony that a victim's genital trauma was consistent with abuse. *See id.* at 140. "Unlike the expert testimony held inadmissible in *Rimmasch,*" the Court noted, the pediatrician "did not testify that the victim was abused, nor did she base her opinions on her

---

**2.** These three steps were later described by the Utah Supreme Court as follows:

> Step one requires the court to determine whether the scientific principles and techniques underlying the expert's testimony are inherently reliable....
>
> If inherent reliability is demonstrated—whether by judicial notice or through a foundational showing—the court then moves to step two, which requires a determination that the scientific principles or techniques at issue have been properly applied to the facts of the particular case by sufficiently qualified experts....
>
> If the trial court determines that the scientific evidence meets the requirements of steps one and two, it must then, under step three, determine whether the proffered scientific evidence will be more probative than prejudicial as required by rule 403 of the Utah Rules of Evidence.

*State v. Crosby,* 927 P.2d 638, 641 (Utah 1996) (citations and footnote omitted). *See also State v.*

*Brown,* 948 P.2d 337, 340–41 (Utah 1997) (listing *Rimmasch* requirements).

**3.** Contrary to Rugebregt's claims, *Rimmasch* does not preclude expert testimony on ultimate issues. The *Rimmasch* holding concerned Rule 608(a) of the Utah Rules of Evidence, which bars expert testimony as to a witness's truthfulness on a particular occasion, and Rule 702, which requires that expert testimony will assist the fact finder in understanding evidence or determining factual issues in order for it to be admissible. *See Rimmasch,* 775 P.2d at 392, 396–97. However, *Rimmasch* did not concern Rule 704 of the Utah Rules of Evidence, which permits otherwise admissible expert testimony that "embraces an ultimate issue to be decided by the trier of fact." Utah R. Evid. 704(a). Hence, if it does not otherwise violate *Rimmasch,* does not "tell the jury what result to reach," and does not give legal conclusions, *see Steffensen v. Smith's Management Corp.,* 862 P.2d 1342, 1347 (Utah 1993), expert testimony on ultimate issues is not inadmissible under *Rimmasch.*

acceptance of the victim's story as true." *Id.* at 141. The Court further distinguished *Rimmasch*-restricted evidence from "[e]vidence that an alleged victim manifests certain physical symptoms that are consistent with sexual abuse." *Id.* Accordingly, the *Kallin* Court held the pediatrician's testimony was "not inconsistent with *Rimmasch,*" and therefore *Rimmasch*'s restrictions did not apply to that testimony: *Id.*

■ Similarly, Bryner–Brown's testimony did not conflict with *Rimmasch.* Unlike the expert testimony held inadmissible in *Rimmasch,* Bryner–Brown did not base her opinions on a perception of the victim's veracity, nor did she testify that Rugebregt raped the victim. Rather, Bryner–Brown related evidence that the victim manifested certain physical symptoms that are "usually" consistent with nonconsensual, forcible sex. Accordingly, Bryner–Brown's testimony is readily distinguishable from testimony subject to the three-part *Rimmasch* test, and *Rimmasch* was no bar to its admission. *See State v. Quas,* 837 P.2d 565, 567 (Utah Ct. App.) (refusing to apply *Rimmasch* requirements where expert based testimony on physical evidence rather than psychological profile), *cert. denied,* 853 P.2d 897 (Utah 1992).

■ In addition to the distinctions recognized in *Kallin,* the Utah Supreme Court has held that *Rimmasch* applies only "to the specific circumstances of that case—namely, the erroneous *admission* of evidence." *State v. Harmon,* 956 P.2d 262, 271 (Utah 1998) (emphasis in original). Thus, *Rimmasch* does not apply where the trial court ordered the improper testimony stricken and gave the jury a curative admonition. *See id.* Accordingly, *Rimmasch* does not apply to Bryner–Brown's testimony that the victim's injuries could not have resulted from consensual intercourse because the trial court ordered this testimony stricken from the record and admonished the jury to disregard it.[4]

---

4. That the trial court took this action on direct-examination, but not when Bryner–Brown offered the same testimony on cross-examination, is inconsequential. "[A] party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Dunn,* 850 P.2d 1201, 1220 (Utah 1993). After Bryner–Brown made her po-

### ADDITIONAL CONCERNS

■ Even though admissible under *Rimmasch,* testimony such as that offered by Bryner–Brown is not free from other scrutiny. All expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Utah R. Evid. 702. Moreover, expert testimony is "subject always to a weighing in each case of its probativeness against its potential for unfair prejudice" under Rule 403 of the Utah Rules of Evidence. *State v. Rimmasch,* 775 P.2d 388, 401 (Utah 1989). However, Rugebregt never specifically argued that Bryner–Brown's testimony failed to assist the jury under Rule 702. Also, Rugebregt failed to raise any Rule 403 objection to this testimony at trial, and the trial court did not sufficiently consider this argument in denying Rugebregt's Motion for New Trial to revive it for appeal. *See generally State v. Johnson,* 821 P.2d 1150, 1161 (Utah 1991) (allowing trial court to revive previously unraised issue for appeal by "fully" considering issue in ruling on motion for new trial). Consequently, we have no occasion to consider the implications of Rules 702 or 403 in this appeal.

■ Finally, although the only challenged testimony admitted by the trial court—Bryner-Brown's statement that the victim's injuries were of the type usually caused by "forcible" intercourse—could have been better dealt with, we see no error in permitting the testimony to stand. Although lawyers might, a lay jury would not necessarily discern a meaningful difference between "forcible" and "forceful." *See* Merriam Webster's Collegiate Dictionary 455 (10th ed.1994) (defining "forceful" as "possessing or filled with force," and "forcible" as, inter alia, "characterized by force, efficiency, or energy").

Moreover, questionably admitted testimony is not prejudicial when "the trial court's

---

sition as to the nonconsensual nature of the sexual encounter perfectly clear during direct-examination, Rugebregt's counsel elected to elicit this position again during cross-examination. Under these circumstances, Rugebregt cannot now take advantage of any error resulting from Bryner–Brown's reiteration of her position, as he invited it.

instructions to the jury ... adequately treated the subject and thus neutralized whatever error may have occurred at trial by giving the jury a framework within which to weigh the testimony." *Nelson v. Trujillo*, 657 P.2d 730, 733 (Utah 1982). In this case, the trial court more than adequately neutralized any error caused by Bryner–Brown's testimony through its subsequent treatment of the testimony. The court meticulously scrutinized Bryner–Brown's testimony. It sustained Rugebregt's objections, required evidentiary proffers from the prosecutor, and instructed the jury on the subject of Bryner–Brown's testimony.[5] In other words, the trial court gave the jury a proper framework within which to weigh the testimony, largely neutralizing any errors. Under these circumstances, admitting Bryner–Brown's testimony that the victim's injuries were of the type usually caused by "forcible" rather than "forceful" intercourse does not warrant reversal, especially because the court admonished the jury to disregard the testimony that the victim's physical injuries could not have been caused by consensual sex.

## CONCLUSION

By failing to request a continuance or other appropriate remedy under Rule 16(g) of the Utah Rules of Criminal Procedure, Rugebregt waived his right to challenge Bryner–Brown's unexpected testimony that was at odds with the prosecutor's discovery proffers. Additionally, Bryner–Brown's testimony is wholly distinguishable from the type of testimony restricted by *Rimmasch* and thus was not barred by that decision. Finally, no other evidentiary error alleged by Rugebregt was adequately preserved or sufficiently prejudicial to warrant reversal.

The convictions are affirmed.

BILLINGS and GREENWOOD, JJ., concur.

---

5. Although we conclude that the trial court's curative admonitions to the jury adequately diminished any undue prejudice to Rugebregt, we note that the efficacy of such curative admonitions is not without its skeptics. *See State v.* *Harmon*, 956 P.2d 262, 277–79 (Utah 1998) (Durham, J., concurring in the result) (expressing reservations about efficacy of curative jury instructions and citing legal commentary proposing alternatives).