2008 UT App 48

**STATE of Utah, Plaintiff and Appellee,**

v.

**Carl McCLELLAN, Defendant and Appellant.**

**No. 20051048–CA.**

Court of Appeals of Utah.

Feb. 22, 2008.

Margaret P. Lindsay, Orem, for Appellant.

Mark L. Shurtleff, atty. gen., and Marian Decker, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶ 1 Defendant Carl McClellan appeals his conviction of rape, a first degree felony. *See* Utah Code Ann. § 76–5–402 (Supp.2007). We affirm.

## BACKGROUND

¶ 2 In 1988, McClellan was arrested and charged with rape. Throughout the pretrial process, McClellan was represented by attorney Phil Hadfield. At some point prior to trial, however, Hadfield ceased representing McClellan and took a position with the Utah County Attorney's Office (the County Attorney), the agency prosecuting McClellan. Three days prior to trial, McClellan's new attorney, James Rupper, filed a motion to continue, which the trial court denied because McClellan refused to waive his right to a speedy trial. The trial then proceeded as scheduled.

¶ 3 During jury selection, the trial court asked the potential jurors, "Do any of you as jurors know any of those witnesses who have been identified for us or the attorney or parties in this matter ... ?" Juror Douglas replied that she knew the prosecutor through her work as a clerk at the Spanish Fork Circuit Court. The trial court then asked Juror Douglas whether there was "[a]nything in the nature of your relationship with [the prosecutor] which would create a problem for you in acting fairly and impartially as a juror?" Juror Douglas replied in the negative and then stated that she could disregard her association with the prosecutor and "render a verdict based solely on the evidence." Juror Douglas also stated that she knew McClellan's trial counsel, but that her acquaintance would not prevent her from being "fair and impartial."

¶ 4 Later, at McClellan's request, the trial court asked Juror Douglas about her employment as a court clerk. Juror Douglas indicated that she had "significant contact with law enforcement authorities," that she sat in court for criminal proceedings, and that she discussed the outcome of criminal cases with attorneys and judges. The trial court then asked Juror Douglas, "Would the things that you have learned and experienced have a tendency to influence you in this particular case in weighing the evidence that you would hear today?" Juror Douglas replied, "I don't believe so." McClellan later moved to strike Juror Douglas for cause, which the trial court denied. McClellan then used a peremptory challenge to remove Juror Douglas.

¶ 5 Another juror, Juror Williams, also replied that she knew the prosecutor because she had worked with him "for a few months a few years ago." Juror Williams then stated that this relationship would not make it difficult for her to act "fairly and impartially as a juror." Juror Williams also stated that she worked as "a secretary to the court administrator here in the district court." McClellan did not object to Juror Williams, and she served on the jury.

¶ 6 During trial, the Deputy County Attorney sought to introduce an audiotape containing a police interview of McClellan. This tape had not been disclosed to McClellan prior to trial. McClellan moved to suppress the tape on the grounds that the interrogat-

ing police officer had failed to advise McClellan of his *Miranda* rights during the recorded interview and because the late production of the tape constituted an unfair surprise. The trial court denied this motion. The prosecutor then authenticated the tape through direct examination of the police officer who conducted the interview and asked that it be admitted for the purpose of "rebut[ting] the statements of the defendant." McClellan's counsel then stated that he had "[n]o objection to the tape being admitted for that purpose." A portion of the tape was then played for the jury. Afterwards, the trial court instructed the jury that the tape was admitted only for rebuttal purposes. Although the tape was not transcribed into the record, the parties agree that the tape impeached McClellan's trial testimony regarding whether he initially lied to the police officer during the interview.

¶ 7 The jury convicted McClellan of rape, and he was sentenced to five years to life on September 23, 1988. After the trial court's denial of McClellan's motion for a new trial, he filed a timely notice of appeal on February 27, 1989. After several changes in appellate counsel, McClellan's appeal was dismissed on January 30, 1992 for failure to file a brief. Approximately three years later, McClellan filed a pro se habeas corpus petition in the Third District Court, which was dismissed as untimely. McClellan appealed from the dismissal of the habeas corpus petition and this court reversed, ordering that McClellan be re-sentenced nunc pro tunc, with credit for time served. For reasons that are unclear, the order for re-sentencing was never filed with the Fourth District Court.

¶ 8 On June 12, 1996, the Fourth District Court issued a Notice of Intent to Dispose of Exhibits and Order, indicating the court's intent to discard the exhibits in the file, including the tape of McClellan's interrogation, unless a timely objection was filed. Because the order of re-sentencing still had not been filed and there were no objections regarding the destruction of exhibits, the Fourth District Court disposed of that evidence.

¶ 9 On July 15, 2004, McClellan wrote a letter to the Fourth District Court notifying it of the order to re-sentence. After a series of motions, continuances, and changes in counsel, McClellan was re-sentenced on October 4, 2005. McClellan appealed and filed a motion for remand under rule 23B of the Utah Rules of Appellate Procedure, *see* Utah R.App. P. 23B. We denied the rule 23B motion.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 McClellan argues that the trial court committed plain error by failing to disqualify the entire County Attorney's office after Hadfield, McClellan's former attorney, joined that office. "[T]o establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful...." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). Similarly, McClellan contends that trial counsel rendered ineffective assistance for failing to move to disqualify the entire County Attorney's office. "When an ineffective assistance of counsel claim 'is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law.'" *State v. Holbert*, 2002 UT App 426, ¶ 26, 61 P.3d 291 (quoting *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct.App. 1998)).

¶ 11 Next, McClellan argues that the trial court committed plain error, and that trial counsel rendered ineffective assistance, by letting an individual with a conflict of interest sit on the jury. The aforementioned standards of review are also applicable to this challenge. *See id.* (noting standard of review for ineffective assistance of counsel claim is correctness); *Dunn*, 850 P.2d at 1208 (stating elements of plain error).

¶ 12 Finally, McClellan claims the trial court erred by allowing the jury to hear portions of the audiotape of the police interview. "[A] trial court's decision to admit or bar testimony for failure to adhere to discovery obligations lies within the trial court's discretion." *State v. Perez*, 2002 UT App

211, ¶ 24, 52 P.3d 451 (alteration in original) (internal quotation marks omitted).

## ANALYSIS

### I. Disqualification of Prosecutor's Office

¶ 13 McClellan first urges us to reverse based upon the fact that Hadfield withdrew from representation just a few days prior to trial and began working for the County Attorney. According to McClellan, the entire County Attorney's office should have been disqualified to prevent other prosecutors from using confidential information that McClellan may have shared with Hadfield. Because this challenge was not raised in the trial court, McClellan asks us to reverse his conviction under either the doctrine of ineffective assistance of counsel or plain error. We address each of these issues in turn.

¶ 14 McClellan claims that he was provided ineffective assistance because trial counsel did not move to disqualify the entire County Attorney's office. We are unpersuaded. To succeed on a claim of ineffective assistance of counsel, "[McClellan] has the burden of proving (1) 'that counsel's performance was deficient' and (2) that 'the deficient performance prejudiced the defense.'" *State v. Santana–Ruiz,* 2007 UT 59, ¶ 19, 167 P.3d 1038 (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "If [McClellan] fails to establish either of the two parts of the *Strickland* test, counsel's assistance was constitutionally sufficient, and we need not address the other part of the test." *State v. Alfatlawi,* 2006 UT App 511, ¶ 17, 153 P.3d 804 (internal quotation marks omitted).

¶ 15 McClellan asserts that trial counsel rendered ineffective assistance because he did not move to disqualify the entire County Attorney's office after Hadfield joined that office. In determining whether counsel performed deficiently, "'we must indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *State*

*v. Bryant,* 965 P.2d 539, 542 (Utah Ct.App. 1998)).

¶ 16 The resolution of McClellan's ineffective assistance claim depends on the proper framework for analyzing whether the conflict of interest of one prosecutor should disqualify the entire prosecutorial office. Other courts that have considered this issue have split on the proper analysis to be applied, with some requiring automatic disqualification and others adopting a rebuttable presumption of disqualification.

> The majority of jurisdictions do not *per se* disqualify the entire prosecutor's office solely because one member of the staff had represented the defendant in a related matter. Instead, these jurisdictions permit another prosecutor to handle the case if the defendant's former counsel has been effectively screened from participating in the prosecution....
>
> Jurisdictions that follow the minority rule prohibit screening to remedy imputed conflicts and *per se* disqualify the entire prosecutor's office, regardless of the good faith intent and motivation of the prosecutors involved.

*Lux v. Commonwealth,* 24 Va.App. 561, 484 S.E.2d 145, 150–51 (1997) (discussing cases addressing imputed disqualification of entire prosecutor's office).

¶ 17 If Utah were to adopt the minority view, the entire County Attorney's office would automatically be disqualified and prejudice against McClellan would be presumed. *See, e.g., People v. Stevens,* 642 P.2d 39, 40–41 (Colo.Ct.App.1981) (disqualifying entire prosecutor's office without showing of impropriety by prosecutors or prejudice to defendant). On the other hand, if Utah adopts the majority view, disqualification of the entire County Attorney's office could be avoided by effectively screening Hadfield from the prosecution of McClellan.

¶ 18 Although the precise question of whether employment of the defendant's former counsel will per se disqualify the entire prosecutor's office is an issue of first impression,[1] there is some guidance from prior

---

1. The issue was raised in *State v. Larsen,* 828 P.2d 487 (Utah Ct.App.1992), but never resolved because the isolated matters on which the lawyer

had rendered legal advice to the defendant were not substantially related to the securities violations being prosecuted by the Utah Attorney Gen-

Utah decisions. In *State v. Brown*, 853 P.2d 851 (Utah 1992), the Utah Supreme Court adopted a per se rule which prohibits an attorney with concurrent prosecutorial obligations from also representing indigent defendants. *See id.* at 859. In reaching its decision, the *Brown* court noted that "vital interests of the criminal justice system are jeopardized" when such dual representation is permitted. *Id.* at 856–57. One of the court's concerns was the possible erosion of public confidence in the criminal judicial system. "To ensure faith in the impartiality and integrity of the justice system, the appearance of fairness and impartiality in the adjudication process must be diligently maintained." *Id.* at 858. Similar concerns are raised where, as here, an attorney who previously represented the defendant withdraws while the matter is pending to join the office that is handling the criminal prosecution. Nevertheless, we believe that those concerns can be alleviated, short of disqualification of the entire office, where there is no attempt to function *simultaneously* as a prosecutor and a defense lawyer.[2]

■ ¶ 19 Indeed, the Utah Rules of Professional Conduct suggest that screening[3] is an appropriate method for protecting the interests of a defendant when his or her prior counsel joins a publicly-funded prosecutor's office that is pursuing criminal charges against the defendant. Under the Utah Rules of Professional Conduct, a lawyer has a duty to avoid a conflict of interest that will adversely affect current and former clients. *See* Utah R. Prof'l Conduct 1.7, 1.9 (2007). According to rule 1.9,

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to

the interests of the former client unless the former client gives informed consent, confirmed in writing.

*Id.* R. 1.9(a). Thus, a lawyer is disqualified from representing a client in a matter that is substantially related and adverse to the interests of a former client.

■ ¶ 20 When a private lawyer is disqualified because of a conflict of interest, that disqualification will be imputed to the lawyer's entire firm unless the firm can establish that it has screened the lawyer from working on the matter and provided the former client written notice of the conflict. *See id.* R. 1.10(c) (governing imputed disqualification of law firms); *see also Margulies v. Upchurch*, 696 P.2d 1195, 1200, 1204–05 (Utah 1985) (disqualifying law firm because representation would make it adverse to some of the limited partners of a company represented by the law firm in another action); *SLC Ltd. V v. Bradford Group W., Inc.*, 999 F.2d 464, 467–68 (10th Cir.1993) (applying test for imputed disqualification of law firm based on rule 1.10 of the Utah Rules of Professional Conduct).

¶ 21 The situation here, however, involves a disqualified lawyer who now works in a publicly-funded prosecutor's office. "Rule 1.10 of the Rules of Professional Conduct does not apply as broadly to lawyers working in the Office of the Attorney General." Utah State Bar Ethics Advisory Comm., Formal Op. 142, at 142–1 (1994).

¶ 22 "[D]espite being free from the imputed disqualification rule in these circumstances, the Office of the Attorney General must adopt procedures to ensure that individual lawyers with conflict problems are sufficiently removed and screened from those matters...." *Id.* at 142–3. Indeed, we believe "vital interests of the criminal justice

---

eral's Office where the defendant's former lawyer was then employed. *See id.* at 492. Here, Hadfield represented McClellan in the same matter as that prosecuted by the Utah County Attorney's Office.

**2.** In *Brown*, the Utah Supreme Court outlined the natural tendencies likely to create divided loyalty when an attorney has *concurrent* prosecutorial and defense duties. *See State v. Brown*, 853 P.2d 851, 857 (Utah 1992).

**3.** The term "screened" is defined as "the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules and other law." Utah R. Prof'l Conduct 1.0(*l*) (2007).

system are jeopardized" if such screening is not implemented. *Brown,* 853 P.2d at 856–57. We therefore adopt the majority rule and hold that to ensure faith in the impartiality and integrity of the criminal justice system, and to prevent a chilling effect on a defendant's willingness to confide in defense counsel, the entire prosecutor's office will be assumed to be privy to the confidences obtained by the former defense lawyer. The prosecutor may rebut this presumption by showing that effective screening procedures have been used to isolate the defendant's former counsel from the prosecution of the substantially related criminal charges.

¶ 23 Because we adopt this burden-shifting analysis, we must examine the record to determine whether Hadfield was adequately screened. Unfortunately, the record here is incomplete. The State asserts that McClellan cannot prevail on his ineffective assistance claim because the record does not show whether or not Hadfield was screened from the prosecution of McClellan's case, and because any inadequacy in the record must be construed against McClellan. We agree. "[W]here, on direct appeal, defendant raises a claim that trial counsel was ineffective . . . , defendant bears the burden of assuring the record is adequate." [4] *State v. Litherland,* 2000 UT 76, ¶ 16, 12 P.3d 92. Further, if "the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *Id.* ¶ 17; *see also State v. Penman,* 964 P.2d 1157, 1162 (Utah Ct.App.1998) ("When a

defendant raises an ineffective assistance claim for the first time on appeal, the claim will be reviewed only if the . . . record is adequate to permit decision of the issue." (internal quotation marks omitted) (omission in original)). As such, because the record on appeal does not include evidence about whether or not Hadfield was screened from assisting in the prosecution, McClellan cannot show that counsel performed deficiently or that he was prejudiced. Thus, we shall assume that the prosecutor's office adequately rebutted the presumption of shared confidences and that McClellan's trial counsel was satisfied with the precautions taken to screen Hadfield. We therefore must conclude that trial counsel rendered effective assistance.[5]

## II. Disqualification of Juror Williams [6]

¶ 24 Next, McClellan asks us to reverse his conviction on the ground that Juror Williams had a conflict of interest. Again, McClellan raises this issue under plain error and ineffective assistance of counsel. Neither approach persuades us to reverse.

¶ 25 To succeed on his plain error challenge, McClellan must establish that the trial court committed obvious error by failing to remove the challenged juror. *See State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). Additionally, McClellan must prove that the challenged juror " 'expresse[d] a bias or conflict of interest that is so strong or unequivocal as to inevitably taint the trial process.' " *State v. King,* 2006 UT 3, ¶ 22, 131 P.3d 202

---

4. A defendant may use rule 23B of the Utah Rules of Appellate Procedure to ensure that a complete and adequate record is available for appellate review. *See* Utah R.App. P. 23B. McClellan filed a motion for a rule 23B remand, which this court denied because it was "based largely upon the assertion of facts already of record," and also "fail[ed] to set forth any non-speculative facts that establish ineffective assistance and resulting prejudice." Indeed, the trial court conducted a post-trial hearing at which Hadfield testified. Although a record of that proceeding was not retained, Hadfield and Rupper were both present during the hearing. Notably, the 23B motion was not supported by affidavit testimony from either of them in support of McClellan's claim that Hadfield was not screened.

5. We reject McClellan's assertion of plain error for the same reason. *See Gorostieta v. Parkinson,* 2000 UT 99 ¶ 34, 17 P.3d 1110 ("[T]he burden is upon the appellant to provide an adequate record for review, and without an adequate record, we must assume the regularity of the proceedings below.").

6. Because Juror Douglas did not serve on the jury, we do not address McClellan's claim that she should have been removed for cause. *See State v. Menzies,* 889 P.2d 393, 398 (Utah 1994) (" 'So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the [Constitution] was violated.' " (alteration in original) (quoting *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988))).

(quoting *Litherland,* 2000 UT 76, ¶ 32, 12 P.3d 92). The fact that Juror Williams worked for the Spanish Fork Circuit Court and had briefly worked with the prosecutor in the past does not meet this burden. *See State v. Cobb,* 774 P.2d 1123, 1127–28 (Utah 1989) (affirming trial court's refusal to dismiss, for cause, a juror that had served as a police officer); *State v. Ramos,* 882 P.2d 149, 152–54 (Utah Ct.App.1994) (holding that juror's twenty-three year employment as a police dispatcher did not per se disqualify him as a juror); *see also State v. Brown,* 177 W.Va. 633, 355 S.E.2d 614, 620 (1987) (stating that relationship to law enforcement officer did not create per se bias of juror, and that juror's relationship to judicial officer is less suggestive of potential bias than relationship to prosecution or defense). Indeed, Juror Williams stated that her employment and prior association with the prosecutor would not affect her ability to be impartial. As such, the trial court did not commit plain error by not disqualifying her for cause.

¶ 26 Respecting his ineffective assistance of counsel claim, McClellan must overcome two presumptions:

> First, trial counsel's lack of objection to, or failure to remove, a particular juror is presumed to be the product of a conscious choice or preference.... Second, because the process of jury selection is a highly subjective, judgmental, and intuitive process, trial counsel's presumably conscious and strategic choice to refrain from removing a particular juror is further presumed to constitute effective representation.

*Litherland,* 2000 UT 76, ¶ 20, 12 P.3d 92. Because the challenged juror did not exhibit "a bias or conflict of interest that is so strong or unequivocal as to inevitably taint the trial process," *King,* 2006 UT 3, ¶ 22, 131 P.3d 202 (internal quotation marks omitted), we cannot conclude that McClellan has overcome these presumptions concerning his trial counsel's performance.

¶ 27 Alternatively, McClellan may demonstrate ineffective assistance of counsel by showing "that defense counsel was so inat-tentive or indifferent during the jury selection process that the failure to remove a prospective juror was not the product of a conscious choice or preference." *Litherland,* 2000 UT 76, ¶ 25, 12 P.3d 92. "To demonstrate actual inattentiveness or indifference, defendant must either prove a specific and clear example of inattentiveness that directly caused the failure to object to a particular juror, or else show that counsel generally failed to participate in a meaningful way in the process as a whole." *Id.* ¶ 25 n. 10.

¶ 28 The facts here do not reveal such inattentiveness. During voir dire, McClellan's trial counsel urged the trial court to ask Juror Douglas specific questions about her work as a clerk at the Spanish Fork Circuit Court. Trial counsel also moved to strike Juror Douglas for cause and then used a peremptory challenge to remove Juror Douglas. Thus, McClellan's trial counsel "participate[d] in a meaningful way in the [jury selection] process as a whole." *Id.* Consequently, McClellan has not provided this court with "a specific and clear example of inattentiveness," *id.,* that is sufficient to overcome the presumption that trial counsel performed effectively. We therefore hold that McClellan's trial counsel rendered effective assistance.

### III. Admission of Audiotape

▇▇▇ ¶ 29 Finally, McClellan argues that he is entitled to a new trial because the trial court erred by admitting a portion of the audiotape containing his police interrogation. For the reason stated below, we conclude that McClellan did not preserve this issue.

▇▇▇ ¶ 30 During trial, the police officer who conducted the interview revealed the existence of the tape to the prosecutor and the defense.[7] Defense counsel originally moved to suppress the tape on the grounds of surprise and the failure to properly instruct McClellan as to his *Miranda* rights. The trial court denied that motion, ruling that a portion of the tape could be used for

---

7. Although there is no indication that the prosecutor knew of the tape prior to that time, "[i]nformation known to police officers working on a case is charged to the prosecution since the officers are part of the prosecution team." *State v. Shabata,* 678 P.2d 785, 788 (Utah 1984).

rebuttal purposes.[8] Although trial counsel continued to argue that the tape should be excluded on the ground of surprise, he conceded that, if it came in, he had "no objection to the tape being admitted for [rebuttal] purpose[s]." At no time, did defense counsel seek a continuance of the proceedings to prepare a response to this new evidence. On appeal, McClellan contends that the State violated rule 16(g) of the Utah Rules of Criminal Procedure[9] by failing to disclose the tape and that McClellan was prejudiced by undue surprise. For purposes of this analysis, we assume without deciding that the State was required to produce the tape to the defendant prior to trial and that its failure to do so violated rule 16(g).

¶ 31 In *State v. Rugebregt*, 965 P.2d 518 (Utah Ct.App.1998), the Utah Supreme Court explained that:

> Rule 16(g) thus provides several remedies to mitigate prejudice caused by unanticipated testimony, including a continuance. When the prosecution introduces unexpected testimony, a defendant "essentially waive[s] his right to later claim error" if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g).

*Id.* at 522 (quoting *State v. Larson*, 775 P.2d 415, 418 (Utah 1989)). The State argues that, by failing to seek a continuance, McClellan waived any argument that he was prejudiced by the admission of the tape. In response, McClellan claims that his motion to suppress was a request for "other appropriate relief under Rule 16(g)" which was sufficient to preserve his claim of surprise. *See id.* We disagree and hold that once the trial court ruled that a portion of the tape would be admitted, McClellan had an obligation to mitigate any impact by seeking a continuance. Because that was not done, McClellan's claim of surprise has been waived.

¶ 32 Indeed, a careful reading of *Rugebregt* does not support McClellan's position. In that case, a registered nurse called by the prosecution in a rape trial testified contrary to the written summary provided to the defense. *Id.* at 520–21. Trial counsel objected to the surprise testimony, seeking to have it excluded. *Id.* The trial court sustained some objections but overruled others, letting a portion of the surprise testimony into evidence. *Id.* On appeal, the defendant argued that "had the prosecutor accurately represented the nature of [the nurse's] testimony, [defense] counsel could have called rebuttal witnesses." *Id.* at 523. The Utah Supreme Court rejected this argument, stating:

> [Defendant] never requested a continuance to locate such witnesses, or to devise *any* means of dealing with [the nurse's] unexpected testimony. A continuance could have mitigated or eliminated the ensuing prejudice. Consequently, by failing to make a timely request for a continuance, [defendant] waived his Rule 16 challenge to [the nurse's] testimony.

*Id.* Thus, although defense counsel in *Rugebregt* registered an objection at the time the testimony began to differ from the written statement, the Utah Supreme Court held that a further motion to continue the proceedings was required to preserve the claim of surprise. *Id.; cf. State v. Knight*, 734 P.2d 913, 916 (Utah 1987) (reversing conviction where defense counsel made alternative motions for exclusion of the surprise evidence and for a continuance).

¶ 33 This position is consistent with that taken by other jurisdictions. *See State v. Walls*, 224 Ill.App.3d 885, 166 Ill.Dec. 834, 586 N.E.2d 792, 801 (1992) ("A defendant waives the issue of an abuse of the court's discretion in allowing the introduction of evidence not disclosed by the State where, after the statement is admitted, he fails to request

---

8. The trial court allowed a portion of the tape to be played, and then immediately instructed the jury that the tape was "simply for that limited rebuttal purpose," which was "to determine the testimony of the defendant as it relate[d] on the tape as compared to his statements on the stand relative to that same examination."

9. Rule 16(g) provides that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. Utah R. Crim.P. 16(g).

a continuance to investigate the statement or to impeach the witness regarding the statement."); *Boyd v. State*, 485 N.E.2d 126, 128 (Ind.1985) ("[A]ppellant failed to alternatively request a continuance upon moving to exclude the allegedly surprise evidence. The failure to do so, where a continuance may possibly be the appropriate remedy, constitutes a waiver of any error pertaining to noncompliance with the discovery order."); *Oprean v. State*, 201 S.W.3d 724, 730 n. 10 (Tex.Crim.App.2006) ("[T]he trial court may always exclude the undisclosed evidence, but if he does not, any error in causing 'surprise' to the defense is forfeited on appeal unless the defendant has also requested a postponement or recess.").

¶ 34 Here, McClellan sought to suppress the tape as a remedy under rule 16(g). The trial court denied that motion as to a portion of the tape that was admitted for rebuttal purposes. It is within the sound discretion of the trial court to determine which rule 16(g) remedy is appropriate under the circumstances. *See State v. Christofferson*, 793 P.2d 944, 948 (Utah Ct.App.1990) ("[I]t was not unreasonable for the trial court to deem it unjust to grant defendant's motion [to dismiss] when there were other, less harsh remedies specifically mentioned in the [rule] available to him.").[10] Once the trial court refused to exclude the entire tape, "[a] continuance could have mitigated or eliminated the ensuing prejudice." *Rugebregt*, 965 P.2d at 523. In the absence of such a request, the claim of surprise is waived.

**10.** The *Christofferson* court was interpreting a statute almost identical to current rule 16(g). *See State v. Christofferson*, 793 P.2d 944, 948

## CONCLUSION

¶ 35 We hold that when defense counsel joins a publicly-funded prosecutor's office which is pursuing a substantially related matter against a former client, a presumption arises that all prosecutors have become privy to confidential information communicated by that defendant to former defense counsel. The prosecutor may rebut this presumption by showing that former defense counsel has been effectively screened from the ongoing prosecution of the defendant. To the extent deficiencies exist in the record on appeal, we will presume that defendant's trial counsel acted effectively. Therefore, we reject McClellan's claim that his trial counsel acted ineffectively when he did not move to disqualify the entire Utah County Attorney's Office. Furthermore, McClellan did not meet his burden to establish that the jury that actually heard the evidence in his case was biased, and we hold that the trial court did not err in refusing to strike Juror Williams for cause. Finally, McClellan waived any claim of surprise related to the admission of the interview tape.

¶ 36 Affirmed.

¶ 37 WE CONCUR: RUSSELL W. BENCH and JAMES Z. DAVIS, Judges.

(Utah Ct.App.1990). *Compare* Utah R.Crim. P. 16(g), *with* Utah Code Ann. § 77–35–16(g) (1982) (repealed 1989).