239 P.3d 300 (2010)
2010 UT App 239
STATE of Utah, Plaintiff and Appellee,
v.
Jason Tyler HAMBLIN, Defendant and Appellant.
No. 20090061-CA.
Court of Appeals of Utah.
August 26, 2010.
*301 Sara Pfrommer, Park City, for Appellant.
Mark L. Shurtleff and Christine F. Soltis, Salt Lake City, for Appellee.
Before Judges ORME, THORNE, and ROTH.

*302 OPINION
ORME, Judge:
¶ 1 Defendant Jason Tyler Hamblin appeals his convictions for rape of a child, a first degree felony, see Utah Code Ann. § 76-5-402.1 (2008);[1] sodomy on a child, a first degree felony, see id. § 76-5-403.1; and two counts of sexual abuse of a child, second degree felonies, see id. § 76-5-404.1. Hamblin claims that the trial court erred when it refused to grant his motion for a new trial based on an alleged Brady violation. Further, Hamblin argues that the trial court erred by refusing to more fully grant his motion in limine under rule 412 of the Utah Rules of Evidence and by permitting the State to amend the dates of the alleged abuse on the day before trial. We affirm.

BACKGROUND[2]
¶ 2 Around 1994, Hamblin's father and stepmother (Stepmother) divorced and Hamblin moved to New York to live with his biological mother. In 1997, the victim and her two biological brothers were adopted by Stepmother after the victim's biological mother lost her parental rights. At the time of adoption, Stepmother already had two biological children of her own. Around that time, Stepmother's biological son (Brother) began molesting the then-seven-year-old victim, who, in turn, reported the abuse to Stepmother. Upon being confronted by Stepmother, Brother admitted to sexually abusing the victim and promised to stop, but then continued to sexually assault her periodically. He eventually stopped because he felt guilty for what he had done. Despite the sexual assaults, the victim had an affinity for Brother and considered him a "gentle" and "compassion[ate]" abuser.
¶ 3 In late 2000 or early 2001, when Hamblin was twenty or twenty-one years old, he returned to Utah from New York to live with Stepmother and her children at their home on Elm Street in Salt Lake City. Soon after, Hamblin began sexually assaulting the victim, who was ten or eleven years old at the time.[3] Over a period of months, Hamblin sexually assaulted the victim repeatedly, and the assaults did not cease until Hamblin moved out of the home in late 2001.
¶ 4 A few months after Hamblin moved out, Stepmother and some of her children, including the victim, moved to Montana. The victim's life quickly spiraled out of control and, by her own admission, she got into drugs and became "very promiscuous." When the victim was fifteen years old, Stepmother died and the victim was placed in a Montana group home for teenagers. There, the victim first divulged to a therapist the details of Hamblin's repeated sexual assaults. Subsequently, the victim was transferred to a different teenage group home in Idaho. There, the victim disclosed to a therapist the sexual assaults by both Hamblin and Brother.
¶ 5 Prompted by these disclosures, a forensic specialist in Idaho interviewed the then-fifteen-year-old victim on April 25, 2006. In the interview, the victim recounted the abuse she experienced at the hands of Hamblin and Brother. She discussed instances of vaginal rape and sodomy, as well as episodes in which Hamblin inserted various objects into her anus, including a decorative light bulb; a "little, mini M & M tube"; and a dildo. The matter was then referred to the Salt Lake City Police Department.
¶ 6 On October 31, 2006, Hamblin was charged by information with one count each of rape of a child, object rape of a child, and *303 sodomy on a child. Later, while completing some forms that were designed to elicit the details of the abuse, the victim realized that Brother, not Hamblin, had used the light bulb. At some point, the prosecutor learned of the victim's mistake and, accordingly, on May 25, 2007, amended the information to delete the light bulb object-rape charge and all references related thereto. At the preliminary hearing held on the same day, and later at trial, the victim testified that Hamblin used only two objects in sodomizing her: the M & M tube and the dildo. The prosecutor once again amended the information on February 25, 2008, two days before the trial commenced, to alter the alleged dates of the sexual abuse because Hamblin had been living in New York at the time of the initially alleged dates.
¶ 7 Before trial, Hamblin filed a motion in limine, seeking leave to introduce evidence pursuant to an exception in the rape shield rule, see Utah R. Evid. 412(b)(3), related to Brother's sexual assaults on the victim. Without "going in to all the details of [Brother's] sexual abuse," Hamblin sought to explore possible bias and motive behind the victim's disclosures about Brother's abuse because, according to Hamblin, they "were made in a manner that raise[s] questions about the propriety of her accusations against [Hamblin] and her motive for doing so." The trial court granted the motion in part, stating that Hamblin could question the victim about her disclosures to show any bias the victim harbored against Hamblin or Brother, and about any matter to which the prosecutor opened the door during direct examination. The court announced that more specific rulings would have to wait until trial so that the court could judge each question's relevance in context. Hamblin's trial counsel stated that he felt "comfortable waiting [until] trial" for more specific rulings. The court's oral ruling on the rule 412 motion in limine was then reduced to a short, written order immediately before trial.
¶ 8 At trial, Hamblin denied sexually assaulting the victim.[4] Although he offered no explanation for the victim's accusations, his trial counsel suggested that the sexual assaults had indeed occurred, but that Brother, not Hamblin, was the perpetrator of the assaults. Counsel speculated that the victim's allegations were directed at Hamblin in an effort to protect Brother.
¶ 9 At the close of trial, the jury convicted Hamblin of one count of rape of a child, one count of sodomy on a child, and two counts of sexual abuse of a child. However, the jury acquitted Hamblin of two counts of sodomy on a child and two counts of object rape of a child.
¶ 10 Thereafter, Hamblin filed a motion for a new trial, alleging that the prosecutor violated the rule announced in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose that the victim had recanted her light bulb accusation against Hamblin. The court found that Hamblin knew the necessary facts related to the victim's recantation at the preliminary hearing and successfully used those facts as impeachment evidence at trial. Thus, finding no Brady violation, the court denied Hamblin's motion for a new trial. Hamblin now appeals.

ISSUES AND STANDARDS OF REVIEW
¶ 11 Hamblin argues that the trial court erred by denying his motion for a new trial based on an alleged Brady violation. A trial court's denial of a motion for new trial is upheld on appeal "absent a clear abuse of discretion." State v. Bisner, 2001 UT 99, ¶ 31, 37 P.3d 1073 (citation and internal quotation marks omitted). "[H]owever, we review the legal standards applied by the trial court in denying such a motion for correctness." Id.
¶ 12 Next, Hamblin asserts that the trial court's partial deferral of his rule 412 motion in limine denied him the right of confrontation. An evidentiary ruling will not *304 be reversed on appeal "unless it is manifest that the trial court so abused its discretion that there is a likelihood that injustice resulted." State v. Tarrats, 2005 UT 50, ¶ 16, 122 P.3d 581 (citation and internal quotation marks omitted). Whether an evidentiary ruling violated a defendant's right of confrontation is a question of law that we review for correctness. See State v. Clark, 2009 UT App 252, ¶ 10, 219 P.3d 631, cert. denied, 225 P.3d 880 (Utah 2010).
¶ 13 Third, Hamblin insists that the trial court improperly permitted the alleged dates of abuse, as set out in the information, to be amended. A trial court's decision to permit amendment of an information is reviewed for abuse of discretion. See State v. Jamison, 767 P.2d 134, 136-37 (Utah Ct.App. 1989). See also Utah R.Crim. P. 4(d) (recognizing trial court's discretion to amend information).

ANALYSIS

I. Denial of Hamblin's Motion for a New Trial
¶ 14 Hamblin claims that the State violated rule 16(a)(4) of the Utah Rules of Criminal Procedure by "[w]illful[ly] and [d]eliberate[ly]" refusing to disclose evidence that was exculpatory of Hamblin. Under rule 16, the State must indeed disclose to the defense all known evidence "that tends to negate the guilt of the accused." Utah R.Crim. P. 16(a)(4). And the United States Supreme Court, in the landmark decision of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. 1194. See United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (stating that due process requires disclosure of material impeachment evidence). See also State v. Carter, 707 P.2d 656, 662 (Utah 1985) ("[D]ue process requires a prosecutor to disclose even unrequested information which is or may be exculpatory."). Yet,
prosecutorial nondisclosure of information favorable to the accused does not by itself constitute prejudicial error requiring reversal of a conviction. Rather, nondisclosure violates due process under Brady only if the evidence at issue is material and exculpatory, and if the defense did not become aware of the evidence until after trial.
State v. Bisner, 2001 UT 99, ¶ 36, 37 P.3d 1073 (emphasis added). "Evidence is material if `there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Tillman v. State, 2005 UT 56, ¶ 29, 128 P.3d 1123 (quoting Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)) (additional citation and internal quotation marks omitted). Whether due process was violated also depends on whether the defense was provided the potentially exculpatory evidence in a timely manner:
[C]ourts universally refuse to overturn convictions where the evidence at issue is known to the defense prior to or during trial, where the defendant reasonably should have known of the evidence, or where the defense had the opportunity to use the evidence to its advantage during trial but failed to do so.
Bisner, 2001 UT 99, ¶ 33, 37 P.3d 1073. The crux of the issue regarding a prosecutor's duty to disclose, therefore, is whether, based on a totality of the facts, the defendant has been afforded a fair trial. See Carter, 707 P.2d at 662.
¶ 15 It is clear that the victim's recantation of her claim that Hamblin abused her with a light bulb and Brother's eventual admission to abusing the victim with a light bulb are inculpatory evidence as to Brother. But given that the victim retracted her light bulb allegation against Hamblin at or before the preliminary hearing, it is unclear that such evidence is exculpatory as to Hamblin so as to require disclosure under Brady. To the extent that the victim's retraction and Brother's admission are exculpatory as to Hamblin, the State was required to disclose this evidence to Hamblin. See Utah R.Crim. P. 16(a)(4).
*305 ¶ 16 The State argues that its amendment of the information to drop the light bulb object-rape charge and to delete all references to the light bulb should have put Hamblin on notice that Brotherthe only other person implicated in the victim's assaults was the perpetrator of the light bulb incident. Indeed, the State dropped the light bulb object-rape charge and amended the information significantly on May 25, 2007, the same date of the preliminary hearing at which the victim testified that the only objects with which she was sodomized by Hamblin were an M & M tube and a dildo. Moreover, Hamblin already knew that Brother had sexually abused the victim and had used other objects to violate her. Thus, the State may, in fact, be correct in its assertion that Hamblin should have knownor at least been on inquiry noticethat the victim's light bulb allegations against Hamblin were either fabricated or arose from abuse by another perpetrator.
¶ 17 In any event, even if the State's failure to disclose evidence showing that Brother, not Hamblin, sodomized the victim with a light bulb amounted to a Brady violation, and even if the State's amendment of the information is not considered adequate disclosure pursuant to Brady, we nevertheless conclude that such errors were harmless because no prejudice resulted to Hamblin. See Bisner, 2001 UT 99, ¶ 36, 37 P.3d 1073 (explaining that "prosecutorial nondisclosure of information favorable to the accused does not by itself constitute prejudicial error requiring reversal"). In its order denying Hamblin's motion for a new trial, the trial court evaluated with care the victim's recantation of the light bulb allegation as it pertained to Hamblin. The victim's credibility was very much at issue throughout the entire trial, and the evidence of the victim's recantation and Brother's admission to abusing her with a light bulb came out in a way that was quite helpful to Hamblin. Disclosure of the recantation midtrial bolstered the defense's claim that the victim could not really remember who assaulted her and that, over time, she would come to realize that, as typified by the light bulb episode, all the assaults were perpetrated by Brother. Further, Hamblin's trial counsel was able to utilize this evidence to effectively attack the victim's credibility by questioning her regarding the discrepancies in her original and subsequent allegations. Indeed, Hamblin was ultimately acquitted on four of the counts against him, including all object-rape counts. Given the foregoing analysis, we cannot say that Hamblin was prejudiced by any Brady violation that may have occurred, and thus, the trial court did not abuse its discretion by denying Hamblin's motion for a new trial.
¶ 18 We realize it is rare when courts find Brady violations. See Bisner, 2001 UT 99, ¶ 33 & n. 1, 37 P.3d 1073. And the point is well made by Hamblin that the promise of Brady has not really been fulfilled over the years. See generally Bennett L. Gershman, Litigating Brady v. Maryland: Games Prosecutors Play, 57 Case W. Res. L.Rev. 531 (2007); Michael J. Benza, Commentary, Brady, Brady, Wherefore Art Thou Brady?, 57 Case W. Res. L.Rev. 567 (2007). In the future, if evidence might be of the type contemplated by Brady and the failure to disclose such evidence might result in a Brady violation, prudence dictates that all parties especially prosecutors and others in the business of justice[5]ought to err on the side of disclosure. Clearly, the better practice for the State is to disclose in a timely fashion any evidence conceivably required to be disclosed under Brady rather than to find itself in the awkward position of having to rationalize and defend nondisclosure on appeal.

II. Deferral of Hamblin's Rule 412 Motion in Limine
¶ 19 Hamblin claims that the trial court's partial deferral of his motion in limine, *306 which sought leave to admit evidence pursuant to an exception in rule 412 of the Utah Rules of Evidence, denied him his right of confrontation. See Utah R. Evid. 412(b)(3). Hamblin alleges that because of the court's ruling, he was unable to present his best defense to the jury in his opening statement.
¶ 20 Rule 412(a) bars admission of a victim's past activities "that involve actual physical conduct ... or that imply sexual intercourse or sexual contact." State v. Tarrats, 2005 UT 50, ¶ 22, 122 P.3d 581 (omission in original) (citation and internal quotation marks omitted). The Utah Supreme Court, in adopting rule 412, was mindful "that an alleged victim's prior sexual conduct `is simply not relevant to any issue in the rape [or other sexual crimes] prosecution.'" Id. ¶ 21 (quoting Utah R. Evid. 412 advisory committee note) (additional citation and internal quotation marks omitted). Even in the rare case when it is relevant, such evidence may nevertheless be excluded by Utah Rule of Evidence 403 because of its "unusual propensity to unfairly prejudice, inflame, or mislead the jury and ... distort the jury's deliberative process." Id. (citation and internal quotation marks omitted).
¶ 21 Notably, rule 412(b)(3) does provide an exception to the usual rule, stating that evidence of a victim's sexual behavior is admissible where the evidence is "otherwise admissible under these rules [and its exclusion] would violate the constitutional rights of the defendant." Utah R. Evid. 412(b)(3). In other words, before a victim's sexual behavior may be admitted under the exception, a "[d]efendant must demonstrate both that the evidence was not prohibited by any other rule of evidence and also that its exclusion would violate his constitutional rights." State v. Clark, 2009 UT App 252, ¶ 15, 219 P.3d 631, cert. denied, 225 P.3d 880 (Utah 2010).
¶ 22 Additionally, a defendant's right of confrontation "is not without limitation" and "may ... bow to accommodate other legitimate interests in the criminal trial process." Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (citation and internal quotation marks omitted). See Clark, 2009 UT App 252, ¶ 16, 219 P.3d 631. The right "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original). Indeed, "trial judges retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, [and] confusion of the issues." Lucas, 500 U.S. at 149, 111 S.Ct. 1743 (citation and internal quotation marks omitted). A defendant's confrontation right is violated, however, if a court prohibits the defendant from "`engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose the jury to the facts from which [it] ... could appropriately draw inferences relating to the reliability of witnesses.'" Clark, 2009 UT App 252, ¶ 16, 219 P.3d 631 (alteration and omission in original) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).
¶ 23 At the motion in limine hearing, the trial court granted Hamblin's motion in part, thus permitting Hamblin, in an attempt to show prejudice or bias, to question the victim about her disclosures concerning Brother. The court reserved ruling on the admissibility of the victim's prior inconsistent statements. Then at trial, the court essentially gave the parties free rein with respect to rule 412, permitting them to explore various details of the victim's disclosures relating to Brother's sexual assaults and aspects of the abuse itself. In fact, we are hard pressed to see where evidence related to rule 412 might have come in that did not come in. We simply cannot identify, and Hamblin has not directed us to, any evidence that he sought to present that was not admitted due to the trial court's rule 412 ruling.
¶ 24 Moreover, we reject Hamblin's argument that the partial grant of the rule 412 motion hindered the development of his defense because he could not present it to the jury during opening statements. Hamblin *307 was allowed to fully question the victim and the other witnesses regarding bias, prejudice, inconsistent statements, and even the victim's sexual behavior. The alleged inability to discuss this evidence with the jury during an opening statement simply does not implicate the right of confrontation. See U.S. Const. amend. VI; State v. Gonzales, 2005 UT 72, ¶ 48, 125 P.3d 878 ("The Sixth Amendment right to confrontation `guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him.'") (quoting Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)) (additional citation and internal quotation marks omitted). Thus, we conclude that the trial court did not err in refusing to fully grant Hamblin's motion in limine under rule 412.

III. Amendment of Dates in the Information
¶ 25 Finally, Hamblin challenges the prosecution's amendment of the information to alter the dates of the alleged sexual assaults. We acknowledge that it is troubling that the victim was, at times, so adamant that she was nine years old when Hamblin sexually abused her. However, when it was demonstrated that Hamblin could not possibly have abused the victim when she was nine years old because he lived in New York at the time, the prosecutor's subsequent amendment of the information to alter the dates of the alleged abuse became a compelling tool of great impeachment value. Indeed, the amended information put the victim's credibility squarely at issue, and the jury heard plenty of testimony about the victim's confusion as to her age at the time of the abuse, which ultimately went to her credibility.
¶ 26 Nevertheless, the dates of crimes are not elements of any of the offenses with which Hamblin was charged. See Utah Code Ann. §§ 76-5-402.1, -403.1, -404.1 (2008). See also State v. Robbins, 709 P.2d 771, 772 (Utah 1985) (stating "that when time is not a statutory element ... an information need not state when the charged offense occurred" and concluding that "[t]ime is not an element of" section 76-5-404.1). Moreover, whether an information may be amended is a decision left to the trial court's discretion. See Utah R.Crim. P. 4(d) (permitting an information "to be amended at any time before verdict if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced"). Thus, we review the court's decision to permit the prosecution to amend the information only for an abuse of discretion. See State v. Jamison, 767 P.2d 134, 136-37 (Utah Ct.App.1989).
¶ 27 We agree with the State that children are often unreliable in recalling dates when describing events that occur over time. See State v. Taylor, 2005 UT 40, ¶ 12, 116 P.3d 360; State v. Wilcox, 808 P.2d 1028, 1032-33 (Utah 1991); Robbins, 709 P.2d at 773. Although Hamblin emphasizes the victim's emphatic insistence that she was nine years old at the time of the alleged abuse, we recognize that the victim also testified at the same hearing that the sexual abuse took place after Hamblin came to reside with the family in the home on Elm Streetone of several residences the family occupied over the years. Such testimony is exactly the type of "temporal reference point[ ]" that the Utah Supreme Court concluded children can more reliably identify than a precise year or an exact age. Robbins, 709 P.2d at 773.
¶ 28 Moreover, it is of no moment that the victim realized she must have been older when Hamblin abused her due in part to his solid alibi. Indeed, "notice-of-alibi" statutes are intended to "prevent[ ] last minute surprises and enable[ ] the prosecution to make a full and thorough investigation." State v. Maestas, 815 P.2d 1319, 1325 (Utah Ct.App.), cert. denied, 826 P.2d 651 (Utah 1991). If the prosecution's investigation results in amendments to the information, then those amendments are permissible because a defendant "has no statutory or constitutional right to a charge framed so as to facilitate an alibi defense." State v. Norcutt, 2006 UT App 269, ¶ 17, 139 P.3d 1066 (citation and internal quotation marks omitted).
¶ 29 Ultimately, Hamblin's argument fails because he was not prejudiced by the court's decision to permit the prosecution to amend the dates in the information. See Utah R.Crim. P. 4(d) (permitting amendment unless *308 substantial rights are prejudiced). Because Hamblin's consistently argued position was that he did not ever assault the victim, her age at the time she claims that he did matters little. And as noted, the victim's inconsistency bore on her credibility, which the jury clearly took into account in acquitting Hamblin on half of the charges against him. Thus, Hamblin was not prejudiced by the amendment of dates in the information, and his claim to the contrary fails.

CONCLUSION
¶ 30 With respect to the evidence that Hamblin alleges should have been disclosed by the prosecution pursuant to Brady, we conclude that even if it was not "disclosed" by the prosecution's amendment of the information, Hamblin was not prejudiced in any way by its nondisclosure, and therefore, the trial court did not abuse its discretion in denying Hamblin's motion for a new trial. We also determine that the trial court did not err in its decision to only partially grant Hamblin's rule 412 motion in limine because his confrontation rights were not implicated by any limitation on his ability to include discussion of the pertinent evidence in his opening statement. The trial court also properly permitted the prosecution to amend the alleged dates of abuse in the information because Hamblin was not prejudiced by the court's actions.
¶ 31 Affirmed.[6]
¶ 32 WE CONCUR: WILLIAM A. THORNE JR. and STEPHEN L. ROTH, Judges.
NOTES
[1] As a convenience to the reader, we cite to the current version of the Utah Code. The relevant sections are unchanged from the version in effect at the time Hamblin committed the offenses. See Utah Code Ann. §§ 76-5-402.1, -403.1, -404.1 amend. notes (2008).
[2] Of course, Hamblin begs to differ with much of the account that follows, but, except as otherwise noted, we recite the facts in the light most favorable to the jury's verdict. See State v. Pinder, 2005 UT 15, ¶ 2, 114 P.3d 551.
[3] The victim initially insisted that she was nine years old when the sexual abuse commenced and ten years old when it ended. However, based primarily on evidence that Hamblin did not return to live in Utah until she was ten or eleven years old, the victim eventually realized that she must have been older than age nine when the assaults occurred.
[4] In contrast, Brother admitted to police that he sexually abused the victim. He was charged with, pled guilty to, and was sentenced for his crimes. Subsequently, at Hamblin's trial, Brother testified that he witnessed Hamblin leave the victim's room late at night and heard the victim state that Hamblin was "bothering" her. Brother also acknowledged at trial that he had sexually abused the victim, including with a light bulb.
[5] The United States Supreme Court has noted that "the Brady rule represents a limited departure from a pure adversary model" in that "the prosecutor's role transcends that of an adversary: he `is the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" United States v. Bagley, 473 U.S. 667, 675 n. 6, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (omissions in original) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)).
[6] Hamblin also argues that he was entitled to a new trial based on the ineffective assistance of his trial counsel and the cumulative error doctrine. Because neither of the arguments is adequately briefed, we decline to address them. See generally Utah R.App. P. 24(a)(9) (stating that an "argument shall contain the contentions and reasons of the appellant ..., with citations to the authorities, statutes and parts of the record relied on").