2014 UT App 87

**STATE of Utah, Plaintiff and Appellee,**

v.

**Adrian J. ALVARADO, Defendant
and Appellant.**

**No. 20120807–CA.**

Court of Appeals of Utah.

April 17, 2014.

Samuel P. Newton, for Appellant.

Sean D. Reyes and Marian Decker, for Appellee.

Senior Judge PAMELA T. GREENWOOD authored this Opinion, in which Judges J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.[1]

GREENWOOD, Senior Judge:

¶ 1 Defendant Adrian J. Alvarado appeals his four convictions of various drug-related charges. He raises several claims of error, each involving the State's midtrial disclosure of previously undisclosed and unanticipated evidence. We affirm.

## BACKGROUND

¶ 2 On February 18, 2011, Agent Jared Francom, a member of the Weber–Morgan Narcotics Strike Force, learned from a second agent, Derek Draper, that drug dealing was suspected at a specified house in Ogden, Utah Agent Francom went to the house and conducted surveillance from his vehicle. As he watched, a red car arrived at the home, the male and female occupants of the car entered the house, and shortly thereafter they exited and drove away.

¶ 3 Agent Francom followed the car and observed a signaling violation. He then radioed for assistance to stop the car because he was in an unmarked car and wearing plain clothes. Officer Brett Connors responded and eventually stopped the car. Both officers exited their cars, and Officer Connors approached the driver while Agent Francom went to the passenger side of the car. The driver, Alvarado, told Officer Connors that he did not have a driver license. Officer Connors arrested Alvarado for this violation. Upon searching Alvarado incident to his ar-

rest, the officers found a bundle of $1,850 in cash, which Alvarado claimed was from a tax refund.

¶ 4 During the arrest process, Agent Francom noticed a strong smell of marijuana coming from inside the red car. He asked the woman seated on the passenger side, Shelly Borrego, to step out of the car. When she did so, Agent Francom noted that the marijuana smell was even stronger. Agent Francom observed that Borrego was nervous and seemed to be hiding something. Agent Francom questioned Borrego as to whether she had anything on her, to which she responded that the officer could check her pockets. Agent Francom found nothing in Borrego's pockets, but he observed that she continued to act suspiciously, holding her arms over her middle. He asked her again about having something on her, at which point she took off her shoes and ran at Agent Francom. Agent Francom was able to restrain Borrego, and Officer Connors helped handcuff her. Officer Connors then also detected the marijuana odor.

¶ 5 While the officers were handcuffing Borrego, they saw a small duffel bag sticking out from under her jacket. Agent Francom opened the duffel bag and found grocery bags containing marijuana and a digital scale and another bag containing balloons, a funneling device, heroin, and psilocybin mushrooms. Borrego refused to talk about the drugs, and because Agent Francom suspected that the drugs really belonged to Alvarado, Agent Francom questioned him about them. Alvarado denied that the drugs were his or that he had any knowledge of them.

¶ 6 Although Alvarado denied any knowledge of the drugs found on Borrego, he expressed interest in helping the police find drug dealers so as to reduce charges against him and Borrego. He offered to help the police by arranging a drug buy with large distributors. Agent Francom arranged for Alvarado to meet with several strike force members and attempt to arrange a buy. Officer Connors then took Alvarado to meet with strike force members, including Agent

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

Draper and Agent Lynn Wright. Agent Draper told Alvarado that ·the only deal available was to help Borrego and that Alvarado would have to go to jail regardless. During this conversation, Agent Draper told Alvarado that he needed to be honest. Alvarado then admitted that the drugs found on Borrego were his.

¶ 7 Alvarado spent several hours on his cell phone attempting to arrange a drug deal, while Agent Draper monitored those calls. Alvarado was unable to arrange a drug deal. While the attempts were in process, Agent Francom arrived and had a conversation with Alvarado, in which Alvarado admitted that he had planned to use the cash found on him to buy more drugs, identified the source of some of the drugs, and explained how to package heroin. Thereafter, Agent Draper asked Agent Francom if Alvarado had admitted to him that the drugs were his. Agent Francom said that Alvarado had not. Agent Draper then questioned Alvarado about the drugs, Alvarado and Borrego made eye contact, and Borrego then claimed ownership of the drugs. At this point, Agent Draper told Alvarado that they no longer had any deal, and the officers took both Alvarado and Borrego to jail.

¶ 8 Alvarado was charged with possession of heroin with intent to distribute, possession of psilocyn, possession of marijuana, and possession of drug paraphernalia. On the first day of trial, the officers involved testified about the house surveillance, the traffic stop, the discovery of the drugs, and Alvarado's subsequent admissions. The State also introduced evidence that a fingerprint matching Alvarado's was found on one of the grocery bags containing the drugs. In response, the defense presented testimony by Alvarado's aunt that she had given him $1,500 in cash from her tax return to buy a house. Borrego testified that the drugs were solely hers and that Alvarado had no knowledge of them. She also explained that she used grocery bags from her home and that Alvarado occasionally did shopping for her family.[2]

¶ 9 On the morning of the second day of trial, the State moved to admit, under rule 404(b) of the Utah Rules of Evidence and as proof of lack of mistake, testimony that Alvarado had sold heroin in a controlled buy just before the traffic stop at the house under officer surveillance. The prosecutor stated that he had just learned of this information the night before when speaking with Agent Draper. According to Agent Draper, he and Agent Wright had used a confidential informant to do the controlled buy at the house immediately before the traffic stop occurred, and Agent Draper had requested Agent Francom's assistance because he wanted to catch Alvarado with the drugs still on him. Agent Draper reportedly had not said anything about the controlled buy earlier because he wanted to protect the identity of the confidential informant who facilitated the buy.

¶ 10 The trial court did not immediately rule on the motion, but instead decided to wait to see whether Alvarado would testify and deny knowing anything about the drugs and paraphernalia found on Borrego. Defense counsel then requested, and was granted, ten minutes to confer with Alvarado. Subsequently, Alvarado testified, denying all knowledge of the drugs and paraphernalia found on Borrego. Before cross-examination, the State renewed its request to present evidence of the controlled buy. Defense counsel objected, arguing that the admission of the evidence would be unfair and prejudicial to Alvarado. Although clearly troubled by the late disclosure of the evidence, the trial court ultimately granted the motion to admit the evidence, reasoning, in part, that the evidence was not a surprise to Alvarado because he was involved in the controlled buy and could have told his counsel about it.

¶ 11 On cross-examination, Alvarado continued to deny knowledge of the drugs found on Borrego and further denied involvement in selling heroin prior to the traffic stop. Alvarado claimed that prior to the stop, he was at his fiancée's apartment and a friend came by to sell him a camera. The State then called Agents Draper, Wright, and Francom as rebuttal witnesses. Agent Draper described the controlled heroin buy and Alvarado's involvement in the buy.

---

2. Borrego was charged with and pleaded guilty to possession of the drugs found on her.

Agent Draper also testified that he overheard Alvarado agree to "front" a balloon of heroin to the confidential informant. Agent Draper testified that after the traffic stop, Alvarado admitted fronting the heroin and asked whether the confidential informant was working for the police. Agent Wright largely confirmed Agent Draper's testimony about the controlled buy and Alvarado's later statements concerning the heroin exchange. And Agent Francom testified that he had not known about the controlled buy but testified about his response to Agent Draper's request for assistance in surveillance of the suspected drug house. Defense counsel vigorously cross-examined the officers, highlighting weaknesses in their testimonies, revealing inconsistencies between their current testimony and their testimony given the day prior, and questioning why no report of the alleged buy had ever been submitted.

¶ 12 After both parties rested, defense counsel moved to dismiss based on a discovery violation under rule 16 of the Utah Rules of Criminal Procedure. The trial court denied the motion, determining that the prosecutor was unaware of the controlled buy evidence until the night of the first day of trial and that Alvarado should not have been surprised by the evidence. Thereafter, closing arguments were presented, with defense counsel continuing to emphasize the contradictory statements made by the officers and the lack of supporting evidence for the controlled buy.

¶ 13 The jury returned a guilty verdict on all four counts. The trial court denied Alvarado's motion for a new trial based on hearsay grounds. Alvarado timely appealed, raising other issues on appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 14 Alvarado first argues that the State committed a *Brady* violation when it failed to disclose certain exculpatory evidence before trial, *see Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the trial court should have accordingly granted his motion to dismiss. We review for correctness the legal standards applied by the trial court in denying a defen-

dant's motion to dismiss. *State v. Bisner,* 2001 UT 99, ¶ 31, 37 P.3d 1073.

¶ 15 Alvarado next argues that the State violated rule 16 of the Utah Rules of Criminal Procedure when it failed to disclose evidence of the controlled buy until midtrial and that the trial court erred when it failed to provide relief under the rule. We review such decisions by the trial court for an abuse of discretion. *See State v. Tanner,* 2011 UT App 39, ¶ 5, 248 P.3d 61.

¶ 16 Finally, Alvarado raises a claim of ineffective assistance of counsel based on his counsel's failure to request notice of any evidence intended to be introduced under rule 404(b). "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark,* 2004 UT 25, ¶ 6, 89 P.3d 162.

## ANALYSIS

### I. *Brady* Violation

¶ 17 Alvarado argues that evidence of the controlled buy was, to some extent, exculpatory and that the State violated his constitutional right to due process by withholding this evidence. He relies on *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which first established that "the prosecution bears a fundamental duty to disclose material, exculpatory evidence to the defense" in criminal cases, *State v. Bisner,* 2001 UT 99, ¶ 32, 37 P.3d 1073 (citation and internal quotation marks omitted). This duty "arises regardless of whether the defense requests production of the favorable evidence at issue," *id.,* "applies to substantive as well as impeachment evidence," *State v. Pinder,* 2005 UT 15, ¶ 23, 114 P.3d 551, and exists "irrespective of the good faith or bad faith of the prosecution," *Brady,* 373 U.S. at 87, 83 S.Ct. 1194.

¶ 18 However, not every prosecutorial failure to disclose potentially exculpatory evidence will result in "prejudicial error requiring reversal of a conviction." *Bisner,* 2001 UT 99, ¶ 36, 37 P.3d 1073. Instead, "a *Brady* violation occurs only where the state suppresses information that (1) remains unknown to the defense both before and

throughout trial and (2) is material and exculpatory, meaning its disclosure would have created a 'reasonable probability' that 'the result of the proceeding would have been different.'" *Id.* ¶ 33 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Because the potentially exculpatory evidence here was disclosed mid-trial, no *Brady* violation is present. *See id.* ("[C]ourts universally refuse to overturn convictions where the evidence at issue is known to the defense prior to or during trial...."); *see also Pinder*, 2005 UT 15, ¶ 28, 114 P.3d 551 (refusing to find a *Brady* violation because the defendant, "prior to the end of his trial, knew or should have known of the information he [alleged] was suppressed"); *State v. Hamblin*, 2010 UT App 239, ¶ 14, 239 P.3d 300.[3] In this case, the evidence was revealed during trial and defense counsel was able to vigorously cross-examine the officers. We therefore see no error on the part of the trial court in failing to grant relief under *Brady*.

## II. Rule 16 Violation

¶ 19 Alvarado also argues that the State violated rule 16 of the Utah Rules of Criminal Procedure. This rule states that "the prosecutor shall disclose to the defense *upon request*" both inculpatory and exculpatory evidence, including "evidence known to the prosecutor that tends to negate the guilt of the accused, mitigate the guilt of the defendant, or mitigate the degree of the offense for reduced punishment." Utah R.Crim. P. 16(a) (emphasis added). The rule also provides remedies for its violation:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

*Id.* R. 16(g).

¶ 20 Although Alvarado never made a formal discovery request under rule 16, he argues that such a request was not necessary where the State had been voluntarily disclosing discovery. *See generally State v. Perez*, 2002 UT App 211, ¶ 36, 52 P.3d 451 ("By its voluntary disclosure of some inculpatory evidence, the State was under 'a continuing obligation to disclose newly acquired information so as to avoid misleading the defense.'" (quoting *State v. Kallin*, 877 P.2d 138, 143 (Utah 1994))). But even assuming, without deciding, that the State was under an obligation to disclose the controlled buy evidence under rule 16, Alvarado's claim nonetheless fails because defense counsel did not move for a continuance to remedy the problems arising from the newly disclosed evidence.

¶ 21 As the State points out, Utah courts have repeatedly required defendants to seek the specific remedies listed in rule 16(g) in order to preserve an argument under the rule. *See State v. Griffiths*, 752 P.2d 879, 883 (Utah 1988) ("Despite being informed of defendant's statements prior to trial and having reasonable knowledge that such statements might be used by the prosecution, defense counsel did not move for a continuance, to which he would have been entitled. Thus, under the facts of this case, we conclude that defendant waived relief under rule 16(g) ... by not making timely efforts to mitigate or eliminate the prejudice caused by the prosecutor's conduct."); *State v. Dick*, 2012 UT App 161, ¶ 8, 280 P.3d 445 ("[W]e conclude that Defendant waived his right to challenge that evidence when he did not request a continuance or seek other relief under rule 16(g)...."); *State v. Rugebregt*, 965 P.2d 518, 522 (Utah Ct.App.1998) ("When the prosecution introduces unexpected testimony, a defendant 'essentially waive[s] his right to later claim error' if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g)." (alteration in original) (quoting *State v. Larson*, 775 P.2d 415, 418 (Utah 1989))). Alvarado responds that defense counsel *did* request relief under rule 16(g) because counsel requested both

---

**3.** Further, evidence of the prior drug buy was primarily inculpatory and became exculpatory only when the officers apparently lied on the stand about their initial involvement with the case and the drug buy evidence then had impeachment value.

exclusion of the evidence and dismissal of the case, the former being a specific remedy mentioned in rule 16(g) and the latter falling under the language allowing the court to "enter such other order as it deems just under the circumstances," Utah R.Crim. P. 16(g).

¶ 22 However, the relief requested by Alvarado did not free him of the responsibility to request a continuance to mitigate damage arising from surprise evidence. First, as to the motion to dismiss, prior case law has drawn a distinction between moving to dismiss and moving for the types of relief specifically referenced in rule 16(g). In *State v. Christofferson*, 793 P.2d 944 (Utah Ct.App. 1990), the defendant complaining of a discovery violation "did not object, request a continuance, or call for a mistrial. Rather, [the] defendant moved to dismiss." *Id.* at 948. This court affirmed the trial court's denial of the motion to dismiss where "there were other, less harsh remedies specifically mentioned in the [rule] available to [the defendant]." *Id.* The court reasoned, "[The] defendant's failure to mitigate the impact of the unexpected testimony by objecting to its admission or moving for either a continuance or a mistrial precludes his claim that it was error to not grant his motion to dismiss." *Id.* Finally, the court broadly concluded, "Dismissal is proper only when *all other attempts* to mitigate damage caused by unexpected evidence have failed." *Id.* (emphasis added). And second, regarding Alvarado's objection seeking exclusion of the evidence, we have previously required defendants to request a continuance to preserve a rule 16 argument even when they have already made an objection to the evidence's admission. *See State v. McClellan*, 2008 UT App 48, ¶ 34, 179 P.3d 825, *rev'd on other grounds*, 2009 UT 50, 216 P.3d 956; *Rugebregt*, 965 P.2d at 520–23.

¶ 23 *State v. McClellan* is particularly applicable to this case because the objected-to evidence was known by police officers early on but revealed to the prosecutor only after trial had commenced. *See* 2008 UT App 48,

¶ 30, 179 P.3d 825. This court acknowledged that "'[i]nformation known to police officers working on a case is charged to the prosecution since the officers are part of the prosecution team.'" *Id.* ¶ 30 n. 7 (quoting *State v. Shabata*, 678 P.2d 785, 788 (Utah 1984)). The same is true in this case, and failure to disclose the evidence prior to trial was thus a violation of rule 16(g). The *McClellan* court further rejected the defendant's argument that a motion to suppress the evidence offered was a request for "'other appropriate relief under Rule 16(g)'" and determined that "a further motion to continue the proceedings was required to preserve the claim of surprise." *Id.* ¶¶ 31–32 (citing *Rugebregt*, 965 P.2d at 523). While we recognize the disruptive impact that late disclosure of such information could have had on counsel's defense strategy (and even composure), the request for a continuance provides a simple and straightforward remedy designed for the kind of complex problems that this type of surprise can create. But rather than requesting a continuance to assess the impact of the new information and craft a response—through calling additional witnesses or otherwise—Alvarado limited his requested remedies to exclusion of the evidence or dismissal of the case.[4] Alvarado's claim under rule 16 was therefore waived.

## III. Rule 404(b)

¶ 24 Alvarado argues that his trial counsel was ineffective for failing to request pretrial notice under rule 404(b) of the Utah Rules of Evidence. Rule 404(b) provides for the admission of evidence of a defendant's prior crimes, wrongs, or other acts for certain limited uses. *See* Utah R. Evid. 404(b). The rule contains a notice provision for such evidence:

> On *request by a defendant* in a criminal case, the prosecutor must:
>
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

---

4. Alvarado has not argued that this decision as to remedies amounted to ineffective assistance of trial counsel.

(B) do so before trial, or during trial if the court excuses lack of pretrial notice on good cause shown.

*Id.* R. 404(b)(2) (emphasis added). Alvarado acknowledges that trial counsel failed to request notice under rule 404(b) but argues that such failure amounts to ineffective assistance of counsel.

¶ 25 " 'To prevail [on a claim of ineffective assistance], a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant.' " *Parsons v. Barnes,* 871 P.2d 516, 521 (Utah 1994) (quoting *Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988)). However, we need not " 'address both components of the inquiry if [a defendant] makes an insufficient showing on one.' When it is 'easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' we will do so without addressing whether counsel's performance was professionally unreasonable." *Id.* at 523 (quoting *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (additional citations omitted). "To show prejudice . . ., a defendant must proffer sufficient evidence to support 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* at 522 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

¶ 26 Initially, we recognize that under the facts here, even had trial counsel requested notice under rule 404(b), Alvarado would not have received pretrial disclosure of evidence of the controlled buy because such information was not actually known to the prosecutor before trial. Thus, the question is not whether a pretrial disclosure would have been more favorable for Alvarado than a midtrial disclosure, but instead, how the State's midtrial disclosure would have been addressed by the trial court had 404(b) notice been requested and whether this would have given rise to a reasonable probability of a more favorable result for Alvarado.

¶ 27 Even if trial counsel had requested notice under rule 404(b), we are not convinced that the trial court would have excluded evidence of the controlled buy.[5] The notice requirement of rule 404(b) gives a trial court discretion to allow midtrial disclosure of rule 404(b) evidence upon "good cause shown." Utah R. Evid. 404(b)(2)(B). The trial court here made findings consistent with a determination that good cause was shown for the prosecutor's late disclosure of the controlled buy evidence, specifically, that the prosecutor was unaware of the evidence until the prior evening and had acted in good faith.[6]

¶ 28 Further, even had the trial court refused to admit the midtrial disclosure of the controlled buy evidence, we are not convinced that the exclusion of this evidence would have resulted in a reasonable probability of a more favorable result for Alvarado. First, there exists other strong evidence of Alvarado's guilt. That evidence includes his fingerprint that was found on a grocery bag containing the drugs, the fact that he was carrying $1,850 in cash on his person, and testimony that Alvarado admitted that the drugs found on Borrego were his, explained how to package heroin, and offered to arrange a large drug buy with some of his contacts. Further, the jury apparently found the officers credible, notwithstanding the inconsistencies of their testimonies. And it is likely that the jury's reliance on the officers'

---

5. Admission of the evidence after consideration of the State's failure to provide notice under rule 404(b) would likely trigger the same analysis as under rule 16, that is, the application of the requirement to request a continuance, *see supra* ¶¶ 20–23.

6. We do, however, note our concern with the trial court's reasoning that evidence of the controlled buy was not a surprise to Alvarado because he had participated in the buy. Such reasoning failed to accord Alvarado the presumption of innocence and instead presumed that he had indeed been involved in the drug buy despite his assertions to the contrary. *See generally State v. Sullivan,* 6 Utah 2d 110, 307 P.2d 212, 215 (1957) (stating that the presumption of innocence is "of the utmost importance as [a] safeguard[ ] against the possibility of convicting the innocent" and that we should "scrupulously adhere" to the presumption "notwithstanding the difficulties encountered and the possibility that some guilty may escape punishment").

testimonies would have been even greater in the absence of evidence of the controlled buy and the resulting testimony inconsistencies that diminished their credibility.

## CONCLUSION

¶ 29 Because potentially exculpatory evidence was disclosed midtrial, there was no *Brady* violation. Alvarado's claim of a violation under rule 16 was waived when defense counsel failed to request a continuance. Finally, Alvarado's claim that trial counsel was ineffective because he did not request pretrial notice under rule 404(b) fails for lack of prejudice. Accordingly, we affirm.