2014 UT App 198

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
CHRISTOPHER WILLIAMS,
Defendant and Appellant.

Opinion
No. 20121061-CA
Filed August 14, 2014

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 111900665

Scott S. Bell, Nicole G. Farrell, and Alan S.
Mouritsen, Attorneys for Appellant

Sean D. Reyes and Michelle I. Young, Attorneys
for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGES J. FREDERIC VOROS JR. and STEPHEN L. ROTH
concurred.[1]

BENCH, Senior Judge:

¶1    Christopher Williams appeals from his conviction and
sentence for aggravated kidnapping and aggravated robbery. He
argues that the evidence presented was insufficient to support the
aggravated robbery conviction, that the trial court should have
allowed the admission of certain exculpatory evidence, and that the

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah Code Jud.
Admin. R. 11-201(6).

trial court should have granted his motion for a mistrial due to unanticipated testimony referencing prior bad acts. We affirm.


BACKGROUND[2]

¶2      In January 2011, Williams arranged to meet the victim at a grocery store in an attempt to settle a drug debt the victim owed to Williams's girlfriend. Williams eventually drove the victim to the home of his co-defendant, David Nichols. A short time after their arrival, Nichols beat the victim with a walking stick, rendering him unconscious. That beating was allegedly a reaction to an insult made about Nichols's sister and after Nichols had discovered something that upset him on the victim's cell phone. When the victim awoke, Nichols and Williams were tying him to a chair and threatening to kill him. They took the victim's wallet and cell phone, as well as a food stamp card worth several hundred dollars. They also took the victim's coat and shoes.

¶3      Williams then left to get the victim's car and bring it back to Nichols's house. When he returned with the car, Williams participated in going through the victim's property that was in his car. Williams also brought the title to the car into the house. Nichols wrote a bill of sale transferring the title of the car to Williams, which the victim was forced to sign.

¶4      Williams and another associate, Max Dozah, then put the victim in Williams's girlfriend's car and told him not to move. They drove the victim up Parley's Canyon and then up Emigration Canyon, threatening him as they drove. There was a metal pipe in the car, and Dozah threatened to use the pipe both to break the victim's legs and to kill him. Williams told the victim that "this is how they [took] care of their debts, their problems." They stopped

---

2. "When reviewing a jury verdict, we examine the evidence and all reasonable inferences in a light most favorable to the verdict, reciting the facts accordingly." *State v. Heaps*, 2000 UT 5, ¶ 2, 999 P.2d 565.

the car at the snow closure gate in Emigration Canyon and made the coatless victim get out. Dozah also exited the car and asked Williams to hand him the metal pipe. Williams held the pipe out to Dozah, but Dozah ultimately did not take it. After screaming threats at the victim, Dozah reentered the car, and Dozah and Williams drove away, leaving the victim in the canyon. The victim later flagged down someone who called for help. The police responded, and the victim was eventually transported to a hospital via ambulance.

¶5     Williams was charged with aggravated kidnapping, aggravated robbery, and aggravated assault. Prior to trial, the State moved to exclude Williams's claim that child pornography was what Nichols had seen on the victim's phone. The State argued that the evidence was irrelevant and extremely prejudicial. But Williams argued that the evidence was very relevant because it showed that Nichols had acted alone and spontaneously when beating the victim with the walking stick. The trial court agreed with the State and excluded the evidence.

¶6     At trial, during the State's questioning of the victim, the victim testified that Williams had "dropped off" drugs to him on one previous occasion and had been present during other drug transactions. Williams moved for a mistrial, arguing that this was prior bad acts evidence and that since it had not been disclosed prior to trial, it could not be used. The trial court denied Williams's motion, reasoning that the State had not been trying to elicit prior bad acts testimony and that the testimony was not unfairly prejudicial because "this whole case is about drugs and people who use drugs and collecting of debts and forgeries and etcetera, to settle drug debts."

¶7     At the end of the State's case, Williams moved for a directed verdict, arguing that the elements of the charged offenses had not been proven. The trial court denied the motion, stating that there had been sufficient evidence from which the jury could find that Williams committed the charged crimes.

¶8     Williams was acquitted of aggravated assault but was convicted of aggravated kidnapping and aggravated robbery. He was thereafter sentenced to consecutive sentences of fifteen years to life and five years to life, respectively. Williams timely appeals.

ISSUES AND STANDARDS OF REVIEW

¶9     Williams argues that the evidence was insufficient to support his aggravated robbery conviction, specifically the aggravating factor.

> We will affirm a jury's verdict against a sufficiency of the evidence challenge "if upon reviewing the evidence and all inferences that can be reasonably drawn from it, [we conclude] that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt."

*State v. Mills*, 2012 UT App 367, ¶ 40, 293 P.3d 1129 (alteration in original) (quoting *State v. Hamilton*, 2003 UT 22, ¶ 41, 70 P.3d 111).

¶10     Williams next challenges the trial court's decision to exclude testimony regarding child pornography on the victim's phone. "We review a trial court's decision to admit or exclude evidence under Rule 403 of the Utah Rules of Evidence under an abuse of discretion standard, and will not overturn a lower court's determination of admissibility unless it is beyond the limits of reasonability." *Diversified Holdings, LC v. Turner*, 2002 UT 129, ¶ 6, 63 P.3d 686 (citation and internal quotation marks omitted). Furthermore, "like any other evidentiary ruling, an erroneous decision to admit or exclude evidence based on rule 403 cannot result in reversible error unless the error is harmful." *State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992).

¶11     Finally, Williams challenges the trial court's denial of his motion for a mistrial based on the testimony arguably identifying him as a drug dealer. "We will not reverse a trial court's denial of

a motion for mistrial absent an abuse of discretion." *State v. Cardall*, 1999 UT 51, ¶ 19, 982 P.2d 79 (citation and internal quotation marks omitted).

ANALYSIS

I. Sufficiency of the Evidence

¶12    Williams argues that the evidence presented at trial was insufficient to support his aggravated robbery conviction. Specifically, he argues that there was not sufficient evidence from which the jury could have found that any aggravating factor was met for the aggravated robbery charge.[3] In his marshaling of the evidence, *see generally* Utah R. App. P. 24(a)(9), Williams admits that there was evidence at trial about the use of two objects that could qualify as dangerous weapons: the walking stick and the metal pipe.[4] He argues, however, that he was not sufficiently involved with the use of either object to support the finding of the aggravating factor.

¶13    The requirement of an aggravating factor is met "if in the course of committing robbery, [a person] . . . uses or threatens to use a dangerous weapon." Utah Code Ann. § 76-6-302(1)

_____

3. The State argues that Williams did not preserve this argument for appeal. Although the objection below could have been more detailed, it was not so narrow as to prevent our consideration of the issue on appeal.

4. Both parties address the possibility that the jury could have relied on an additional aggravating factor, namely, that in the course of the robbery the perpetrators "[took] or attempt[ed] to take an operable motor vehicle," *see* Utah Code Ann. § 76-6-302(1)(c) (LexisNexis 2012). We need not address these arguments due to our determination that the evidence was sufficient to support a finding that the dangerous weapon aggravating factor was met.

(LexisNexis 2012). There was no contention that Williams actually used a dangerous weapon himself, but he was instead convicted under an accomplice liability theory. "Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct." *Id.* § 76-2-202. Thus, for Williams's conviction to stand, there must have been evidence supporting the conclusion that Williams solicited, requested, commanded, encouraged, or intentionally aided another person in committing an aggravated robbery.

¶14     Our decision in *State v. Lomu*, 2014 UT App 41, 321 P.3d 243, is instructive here. In *Lomu*, the defendant challenged his aggravated robbery conviction, arguing that there was insufficient evidence to support the conviction because he did not anticipate that his co-perpetrator would threaten the convenience store clerk with the use of a gun just prior to the defendant taking beer from the store. *Id.* ¶¶ 1–2, 19. This court determined that there was sufficient evidence from which the jury could have found that the defendant had the requisite mens rea for the aggravated robbery charge. *Id.* ¶ 21. We stated,

> When a defendant is put on notice that a co-perpetrator has acted in a way that elevates a simple theft to aggravated robbery and he chooses to "actively participate[] and aid[]" that person "rather than fleeing or even remaining without participating," it is proper for a jury to presume the defendant had the requisite mental state for the elevated crime.

*Id.* ¶ 20 (alterations in original) (quoting *State v. Garcia-Vargas*, 2012 UT App 270, ¶ 17, 287 P.3d 474). We determined that even if the defendant did not make a threat and did not know that his co-perpetrator planned to make a threat using a gun, he "actively participated in the elevated crime by choosing to remove the beer from the store after the threat was made." *Id.* ¶ 21. Thus, a jury

could conclude that the defendant "stole the beer knowing a threat involving a gun had been made" and a "conviction of aggravated robbery under an accomplice theory [was] legally sustainable." *Id.*

¶15    Here Nichols beat the victim with the walking stick, rendering him unconscious. When the victim awoke, both Nichols and Williams were tying him to a chair, while Williams threatened the victim's life. Nichols and Williams then stole the victim's possessions out of his pockets and later made him sign over title to his car. Thus, even if Williams did not anticipate the beating, he actively participated in the crime after he knew the beating occurred, that is, he actively participated in the crime after it had been elevated to an aggravated status. Thus, there is sufficient evidence from which the jury could find that he was intentionally participating in an aggravated robbery.

¶16    As to the metal pipe, Williams's involvement is even more apparent. During the drive up the canyon, Williams heard Dozah threaten to break the victim's legs and kill him, and Williams added his own threat that "this is how they [took] care of their debts, their problems." Then when Dozah was outside with the victim and asked for the metal pipe, Williams handed it out the window to Dozah. Thus, Williams intentionally aided in threatening the victim with the metal pipe.

¶17    Williams further argues that neither the beating with the walking stick nor the threats with the metal pipe occurred "in the course of committing robbery," as required by the aggravated robbery statute, *see* Utah Code Ann. § 76-6-302(1) (LexisNexis 2012). "[A]n act shall be considered to be 'in the course of committing a robbery' if it occurs in an attempt to commit, during the commission of, or in the immediate flight after the attempt or commission of a robbery." *Id.* § 76-6-302(3). There is evidence from which the jury could have determined that the acts here were committed in the course of a robbery.

¶18    As to the walking stick, there was testimony that Williams and Nichols intended to rob the victim before bringing him to Nichols's house, that Nichols beat the victim at the house, and that

Nichols and Williams then took the victim's property. The jury could therefore have concluded that the beating occurred "during the commission of" a robbery. *See id.* As to the metal pipe, there is testimony that Dozah and Williams drove the victim up the canyon immediately after the robbery. And Williams provides us with no authority that would suggest that the drive up the canyon was too long to qualify as the "immediate flight" after the robbery. Thus, we determine that the jury could have concluded that both actions were taken in the course of the commission of the robbery as required by statute.

## II. Excluded Evidence

¶19    Williams argues that the court erred by excluding evidence that Nichols found child pornography on the victim's cell phone. However, any error that the trial court may have made in this regard was harmless. *See generally State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) ("[W]e can make an examination of the correctness of the trial court's rule 403 ruling unnecessary by finding that any error was harmless.").

¶20    "Harmless errors are errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." *Id.* (citation and internal quotation marks omitted). "For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." *Id.* (citation and internal quotation marks omitted).

¶21    Williams argues that the evidence was highly probative because it supported his assertion that he was not a part of a plan to beat the victim with the walking stick and that Nichols acted spontaneously and independently. Although the trial court allowed testimony that there was something on the phone that enraged Nichols, Williams argues that knowing the specific detail that child pornography was the trigger makes it much more believable that Nichols would have spontaneously lashed out at the victim. But as we have discussed above, *see supra* ¶¶ 15–16, the

aggravated robbery conviction did not rest on the question of whether Williams had prior knowledge that Nichols would beat the victim. Instead, the jury needed only to determine that Williams intentionally aided in the robbery once it had been elevated to an aggravated robbery. Thus, we do not agree that the exclusion of the specifics as to what prompted the beating created a sufficiently high likelihood of a different outcome to undermine our confidence in the verdict. We therefore determine that any error in this regard was harmless. *Cf. State v. White*, 880 P.2d 18, 23–24 (Utah Ct. App. 1994) (determining any error was harmless where "[t]he presence or absence of the [challenged evidence] would be wholly irrelevant to the jury's determination [regarding the defendant's mental state]").

### III. Rule 404(b) Evidence

¶22   Williams argues that the trial court erred in denying the motion for a mistrial that he made after the victim referenced meeting him at drug pick-ups and drop-offs. Specifically, Williams challenged the following testimony:

> Q. So when did you first get to know the defendant?
> A. I had quite a few dealings with [his girlfriend] and then I think he was at a pickup I was at one time that I got introduced to him at. I believe that's how I met him.
> Q. So prior to January 20th of 2011 how many times did you interact with the defendant?
> A. [Williams] actually dropped off to me one time at Jubilee Parking lot in West Valley and probably maybe three other interactions besides that.
> Q. And are those interactions usually with [his girlfriend] involved?
> A. Yeah, I think Jubilee was the only time I was alone with [Williams] when he dropped off.

In denying Williams's motion, the trial court reasoned,

> [T]his whole case is about drugs and people who use drugs and collecting of debts and forgeries and etcetera, to settle drug debts. It just seem[s] to me that it's [not] that harmful for the jury to hear that the defendant may have been engaged in some other incident with the complaining witness where drugs were dropped off or picked up. It just doesn't seem to me to be that harmful.

¶23   "It is the trial court's responsibility to determine if an incident rises to the level requiring a mistrial, and it is the trial court which must decide if an incident *may have* or *probably* influenced the jury, to the prejudice of [the defendant]." *State v. Cardall*, 1999 UT 51, ¶ 18, 982 P.2d 79 (alteration in original) (citation and internal quotation marks omitted). "Moreover, [w]e review such a decision with just deference because of the advantaged position of the trial judge to determine the impact of events occurring in the courtroom on the total proceedings." *Id.* ¶ 20 (alteration in original) (citation and internal quotation marks omitted). And "[u]nless a review of the record shows . . . that the incident so likely influenced the jury that the defendant cannot be said to have had a fair trial, we will not find that the court's decision was an abuse of discretion." *Id.* ¶ 19 (alteration and omission in original) (citation and internal quotation marks omitted).

¶24   We cannot say that the limited testimony challenged here was so likely to have influenced the jury that Williams did not have a fair trial. The only new information in the challenged testimony was simply that on one occasion Williams himself dropped drugs off to the victim. Other unchallenged testimony, some by Williams himself, showed Williams's drug use and his connection with drug dealing. Indeed, the very reason Williams was involved in the situation here was to collect a drug debt owed to his girlfriend. Thus, the trial court did not abuse its discretion in denying Williams's motion for a mistrial.

¶25   Williams argues that rule 404(b) of the Utah Rules of Evidence prohibits admission of the contested testimony. Rule

404(b) prohibits admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). However, prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* R. 404(b)(2). The State here was not intentionally introducing the evidence to argue that Williams acted like a drug dealer during the events in question, but instead the evidence came in when the State was trying to show prior association between Williams and the victim. Thus, the testimony had a proper non-character purpose. And, as discussed above, we cannot say the trial court abused its discretion when determining that the contested testimony was not unfairly prejudicial to Williams. *See generally id.* R. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

¶26 Williams alternatively argues that under rule 404(b), the State was required to give him pretrial notice that the contested evidence would be used. However, rule 404(b) requires that, when requested, the State must "provide reasonable notice of the general nature of any [bad acts] evidence that the prosecutor *intends to offer at trial*." *Id.* R. 404(b)(2)(A) (emphasis added). Because the trial court determined that the State did not intend to elicit the contested testimony, the notice requirement of rule 404(b) is not applicable.[5]

---

5. Further, even were the notice requirement applicable, Williams should have requested a continuance to remedy any harm caused by the surprise evidence. *See State v. Rugebregt*, 965 P.2d 518, 522 (Utah Ct. App. 1998) ("When the prosecution introduces unexpected testimony, a defendant essentially waive[s] his right to later claim error if the defendant fails to request a continuance or seek other appropriate relief under Rule 16(g) [of the Utah Rules of Criminal Procedure]." (first alteration in original) (citation and internal quotation marks omitted)); *see also State v. Alvarado*, 2014 UT App 87, ¶ 27 n.5, 325 P.3d 116 ("Admission of the evidence after (continued...)

CONCLUSION

¶27    There was sufficient evidence from which the jury could have convicted Williams of aggravated robbery. And any error regarding the trial court's exclusion of testimony regarding the child pornography found on the victim's phone was harmless error. Also harmless were the unanticipated responses of the victim regarding his prior association with Williams, and the trial court therefore did not err in denying Williams's motion for a mistrial. We affirm.

────────

5. (...continued)
consideration of the State's failure to provide notice under rule 404(b) would likely trigger the same analysis as under rule 16, that is, the application of the requirement to request a continuance . . . .").